Roy Anthony SCOTT, a/k/a Roy Anthony Stropkai, Petitioner,

v.

STATE of Alaska, Respondent.

No. 1968.

Supreme Court of Alaska.

March 1, 1974.

Herbert D. Soll, Public Defender, Larry A. Jordan, Asst. Public Defender, Anchorage, for petitioner.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Louis Agi, Asst. Dist. Atty., Anchorage, for respondent.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

OPINION

FITZGERALD, Justice.

This petition for review raises the question of the constitutionality of a superior court pretrial order authorizing broad prosecutorial discovery.

The petitioner Scott was arraigned in superior court on an indictment charging him with rape.[1] The court in conformity to Rule 16(f) of the Alaska Rules of Criminal Procedure scheduled a pretrial omnibus hearing. A few days before the hearing, the respondent State of Alaska filed a motion for a sweeping discovery order. Petitioner filed opposition to the motion, but his objections were overruled. The superior court granted respondent's motion and ordered petitioner to disclose:

(1) the names and addresses of all prospective defense witnesses, other than defendant himself.

(2) the production or inspection and copying of any written or recorded statements in defendant's possession of prospective defense or government witnesses, other than defendant himself.

(3) advance notice of an alibi defense, together with information indicating the place or places defendant claims to have been and the names of witnesses upon whom he intends to rely.

Petitioner promptly sought interlocutory appellate review of the discovery order by way of a petition for review.

We granted the petition for review in this case because we concluded that postponement of appellate review until a final judgment may "result in injustice because of impairment of a legal right" and because "the order . . . sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court."[2]

In his petition for review, Scott claims error on the part of the trial court in several respects. He suggests that the court,

1. AS 11.15.120.

2. Alaska App.R. 23(e), 24(a).

in ordering the pretrial production of certain information not expressly provided for in Rule 16(c) of the Alaska Rules of Criminal Procedure, promulgated a new rule of criminal procedure. This is, he argues, constitutionally impermissible since article IV, section 15 of the Alaska constitution placed the rule-making authority in this court. Petitioner also claims that the discovery order infringes upon his privilege against compulsory self-incrimination under article I, section 9 of the Alaska constitution and the fifth and fourteenth amendments of the United States Constitution. Furthermore, he argues that the discovery order violates his right to effective confrontation and cross-examination secured by article I, section 11 of the Alaska constitution and the sixth and fourteenth amendments to the United States Constitution. Petitioner also advances one claim of procedural error. He argues that the superior court abused its discretion in making a discovery order which goes beyond the express provisions of Criminal Rule 16(c).

We find no merit in Scott's claim that the superior court, in ordering the production of certain information not ex-

pressly mentioned in Criminal Rule 16(c),[3] effectively promulgated a new rule of criminal procedure and thereby usurped this court's constitutional rule-making authority. The record does not establish that the superior court intended to promulgate new rules to govern pretrial procedure in criminal proceedings. Moreover, petitioner's reliance upon Lee v. State[4] is misplaced. While in *Lee* we did observe that the "superior court has no responsibility or authority to promulgate rules of practice and procedure,"[5] the statement was not made in the context of a pretrial order by the superior court. In *Lee* the appellants contended that the trial court was in error for having failed to promulgate rules of procedure by which appeals could be taken from the magistrate's court. In the case before us now, the trial court was ruling upon a motion for discovery brought under existing rules of criminal procedure. Since the underlying facts of the *Lee* case are essentially different, its rationale is not applicable to the case at bar.

We also disagree with petitioner's contention that since the order in question exceeds the scope of materials discoverable under Criminal Rule 16(c), it constitutes

---

3. Alaska R.Crim.P. 16(c) provides:

(1) Non-Testimonial Identification Procedures. A judicial officer may upon motion, for good cause shown, require the accused to do or submit to any or all of the following:

   (i) Appear in a line-up;

   (ii) Speak for *identification by witnesses* to an offense;

   (iii) Be fingerprinted;

   (iv) Pose for photographs not involving reenactment of a scene;

   (v) Try on articles of clothing;

   (vi) Permit the taking of specimens of material under his fingernails;

   (vii) Permit the taking of samples of his blood, hair and other materials of his body which involve no unreasonable intrusion thereof;

   (viii) Provide specimens of his handwriting;

   (ix) Submit to a reasonable physical or medical inspection of his body.

(2) Reports or Statements of Experts. The trial court may require that the prosecuting attorney be informed of and permitted to inspect and to copy or photograph any re-

ports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons which are intended by the defendant to be used at trial. Information obtained by the state under the provisions of this section shall be used only for cross-examination or rebuttal of defense testimony.

(3) Notice of Intent to Raise Insanity Defense. Following substantial compliance by the state with section (b) of this rule a defendant who intends to offer evidence of a defense of insanity shall inform the state of such intention at the time of plea or at such other time as may be designated by the trial court. The court may order the defendant to submit to psychiatric examination by a psychiatrist or psychologist selected by the court, and the report shall be made available to both parties. Notice of intent to raise a defense of insanity shall not be commented on by the prosecution at trial.

4. 374 P.2d 868 (Alaska 1962).

5. *Id.* at 869.

an abuse of trial court discretion. Criminal Rule 16(c) permits the trial court, upon proper motion by the prosecution, to order the accused to submit to certain non-testimonial identification procedures, to allow discovery of experts' reports or statements and to require notice if the accused intends to raise insanity as a defense. The discovery order before us, however, goes beyond the material enumerated in the rule and orders the petitioner to produce the names and addresses of defense witnesses, written statements taken from defense and government witnesses, advance notice of an alibi defense, together with names of prospective alibi witnesses and information concerning the locations to be relied upon for alibi purposes.

■ In our opinion, broad latitude must be accorded a trial court in the conduct and management of pretrial procedures. This interpretation is in keeping with the spirit and purpose of discovery rules generally, and comports with the expressed term of Criminal Rule 16(a).

> (a) Scope of Discovery. In order to provide adequate information for informed pleas, expedite trial, minimize

surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, *discovery prior to trial should be as full and free as possible* consistent with protection of persons, effective law enforcement, and the adversary system. (emphasis added)

Reading sections (a) and (c) of Rule 16 together, we conclude that a ruling compelling the production of items not expressly mentioned in section (c) of the rule is within the "broad discretion of the trial court." We find no abuse of discretion merely because information not specifically included in the rule is ordered to be disclosed.

The most serious constitutional claim advanced by petitioner is that the broad prosecutorial discovery order contravenes his privilege against self-incrimination [6] under the fifth and fourteenth amendments to the United States Constitution [7] and article I, section 9 of the Alaska constitution.[8] In other words, we must determine whether petitioner has a constitutional right to refuse to disclose some or all of the evidentiary material required to be disclosed by the discovery order.

**6.** Recently, the tension existing between prosecutorial discovery and the constitutional privilege against self-incrimination has received considerable attention from legal commentators. *See, e. g.,* Everett, Discovery in Criminal Cases—In Search of a Standard, 1964 Duke L.J. 477, 492–94, 503–05; Moran, Federal Criminal Rules Changes: Aid or Illusion for the Indigent Defendant?, 51 A.B.A.J. 64 (1965); Nakell, Criminal Discovery for the Defense and the Prosecution—the Developing Constitutional Considerations, 50 N.C.L.Rev. 437, 479–516 (1972); Rezneck, Justice Brennan and Discovery in Criminal Cases, 4 Rutgers-Camden L.J. 85 (1972); Symposium, Discovery in Federal Criminal Cases, 33 F.R.D. 47–128 (1965); Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228 (1964); Wilder, Prosecution Discovery and the Privilege Against Self-Incrimination, 6 Am.Crim.L.Q. 3 (1967); Zagel and Carr, State Criminal Discovery and the New Illinois Rules, 1971, U. Ill.L.Forum 557 (1971); Annot., 45 A.L.R.3d 959 (1972); Annot., 96 A.L.R.2d 1224 (1964); Comment, Developments in the Law —Discovery, 74 Harv.L.Rev. 940 (1961);

Note, The Self-Incrimination Privilege: Barrier to Criminal Discovery?, 51 Calif.L.Rev. 135 (1963); Note, Prosecutorial Discovery Under Proposed Rule 16, 85 Harv.L.Rev. 994 (1972); 35 Colo.L.Rev. 290 (1963); 63 Colum.L.Rev. 361 (1963); 76 Harv.L.Rev. 838 (1963); 49 Ia.L.Rev. 176 (1963); 61 Mich.L.Rev. 987 (1963); 15 Stan.L.Rev. 700 (1963).

**7.** The fifth amendment to the United States Constitution provides in part:

> No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law
>
> . . . .
>
> The fifth amendment has been made applicable to the states through the fourteenth amendment to the United States Constitution. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

**8.** Art. I, § 9 of the Alaska constitution provides:

> No person shall be compelled in any criminal proceeding to be a witness against himself.

We begin our analysis by examining the historical development of criminal discovery in the context of the privilege against self-incrimination under the fifth amendment to the United States Constitution. The common law recognized no right of discovery in a criminal case by either the prosecution or the defendant. Nor was such a right said to exist under traditional concepts of due process.[9] In recent years, however, several exceptions have emerged. The prosecution has an affirmative duty to disclose to an accused any information within its control which tends to negate defendant's guilt.[10] It has now become well-settled in many jurisdictions that trial courts have broad discretionary power to order the prosecution to disclose to the defendant any relevant information in the possession or control of the prosecution.[11]

Prosecutorial discovery was strongly condemned in early American jurisprudence. The United States Supreme Court in 1886 announced strong opposition to compulsory self-incrimination through discovery orders. In Boyd v. United States,[12] Mr. Justice Bradley, speaking for the court, stated:

> Now it is elementary knowledge that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict the party of a crime, or to forfeit his property. And any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom.[13]

Similar views have since been expressed by Professor Wigmore:

> It follows that the production of *documents* or *chattels* by a person (whether ordinary witness or party witness) in response to a subpoena, or to a motion to order production, or to other form of *process relying on his moral responsibility for truthtelling*, may be refused under the protection of the privilege [against self-incrimination]. This is universally conceded. (emphasis in original)[14]

As recently as 1967, a federal district court observed that the fifth amendment privilege against self-incrimination operated to bar prosecutorial discovery of evidence to be used in the government's case-in-chief.[15]

9. Cicenia v. LaGay, 357 U.S. 504, 510, 78 S.Ct. 1297, 1301, 2 L.Ed. 1523, 1529 (1958); State v. Thompson, 11 Terry 456, 134 A.2d 266, 268 (Del.1957); Commonwealth v. Bartolini, 299 Mass. 503, 13 N.E.2d 382, 386 (1938), cert. denied, 304 U.S. 565, 58 S.Ct. 950, 83 L.Ed. 1531 (1938); State v. Goldberg, 261 N.C. 181, 134 S.E.2d 334, 340–341 (1964).

10. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States ex rel. Butler v. Maroney, 319 F.2d 622, 627 (3d Cir. 1963); People v. Hoffman, 32 Ill.2d 96, 203 N.E.2d 873 (1965).

11. State v. Coon, 2 Alaska L.J. No. 1 at 3 (Super.Ct.1964); State ex rel. Polley v. Superior Court of Santa Cruz County, 81 Ariz. 127, 302 P.2d 263, 265 (1956); People v. Riser, 47 Cal.2d 566, 305 P.2d 1, 12 (1956), cert. denied, 358 U.S. 646, 79 S.Ct. 537, 3 L.Ed.2d 568 (1959); State v. Haas, 188 Md. 643, 51 A.2d 647, 649 (1947); Common-

wealth v. Bartolini, 299 Mass. 503, 13 N.E.2d 382, 385 (1938), cert. denied, 304 U.S. 565, 58 S.Ct. 950, 83 L.Ed. 1531 (1938); People v. Johnson, 356 Mich. 619, 97 N.W.2d 739, 741–743 (1959); People v. Calandrillo, 29 Misc.2d 495, 215 N.Y.S.2d 364, 366 (Suffolk County Ct.1961); State v. Leland, 190 Or. 598, 227 P.2d 785, 793 (1961), aff'd, 343 U.S. 790, 793, 72 S.Ct. 1002, 1004, 96 L.Ed. 1302 (1952).

12. 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

13. *Id.* at 631–632, 6 S.Ct. at 533, 29 L.Ed. at 751 (footnote omitted).

14. 8 J. Wigmore, Evidence § 2264 (McNaughton rev. 1961) (footnote omitted).

15. In United States v. Fratello, 44 F.R.D. 444 (S.D.N.Y.1967), the trial court declined to condition defense discovery upon the defendant's provision to the prosecution of documentary evidence under the former's

The constitutional questions arising out of prosecutorial discovery are reflected in Rule 16(c) of the Federal Rules of Criminal Procedure. That rule by its terms does not directly compel the defendant to provide prosecutorial discovery. Rather, it permits the court to condition discovery when sought by the defense by requiring the defense to make a reciprocal exchange with the government.[16] Any possible conflict with fifth amendment rights is thought to be avoided on theories of implied consent or waiver by the defendant. Thus the Federal Rules of Criminal Procedure have preserved without resolving the constitutional questions raised by prosecutorial discovery.[17]

Possibly one of the greatest influences in the development of new concepts of criminal discovery generally and prosecutorial discovery in particular has been Justice Roger J. Traynor, formerly Chief Justice of the Supreme Court of California. Writing for that court in 1962, Justice Traynor upheld broad prosecutorial discovery in Jones v. Superior Court of Nevada County.[18] The defendant in the case had been charged with rape. He asserted an affirmative defense of impotency. The Supreme Court of California upheld the prosecution's right to discover the names of witnesses upon whom the defendant intended to rely in advancing his affirmative defense as well as any relevant medical reports and x-rays.[19]

Justice Traynor reasoned that prosecutorial discovery of information relating to issues raised by the affirmative defense

> does not violate the privilege against self-incrimination. Nor to this extent does it violate the attorney-client privilege. It simply requires petitioner to disclose information that he will shortly reveal anyway. Such information is discoverable.[20]

Justice Traynor has discussed the holding in *Jones* in a law review article and has further explained his reasoning that prosecutorial discovery merely accelerated the timing of the defendant's strategic mid-trial decisions.

> [Notice-of-alibi] statutes have been sustained over the objection that they violate constitutional privileges against self-incrimination, for they do not compel the defendant to reveal or produce anything, but merely regulate the proce-

---

control. The court concluded that "the right of a defendant in a criminal case to remain silent in face of accusations against him, even at the discovery stage, seems clear."

16. Fed.R.Crim.P. 16(c) provides:
   (c) Discovery by the Government. If the court grants relief sought by the defendant under subdivision (a)(2) or subdivision (b) of this rule, it may, upon motion of the government, condition its order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, upon a showing of materiality to the preparation of the government's case and that the request is reasonable. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, or by prospective government or defense witnesses, to the defendant, his agents or attorneys.

17. The Advisory Committee on Rules suggested:
   "Mutual disclosure so far as consistent with the privilege against self-incrimination would seem as appropriate as in civil cases." Fed.R.Crim.P. 16, 18 U.S.C.A. Rule 16, at 19 (1969).

18. 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962).

19. For critical constitutional commentary upon the holding reached in *Jones, supra* n. 19, *see* Smith and McCollom, Counterdiscovery in Criminal Cases: Fifth Amendment Privileges Abridged, 54 A.B.A.J. 256 (1968); Wilder, Prosecution Discovery and the Privilege Against Self-Incrimination, 6 Am.Crim. L.Q. 3 (1967); Note, 63 Colum.L.Rev. 361 (1963); Note, 15 Stan.L.Rev. 700 (1963).

20. 22 Cal.Rptr. at 882, 372 P.2d at 922.

dure by which he presents his case. We found this reasoning persuasive. The trial court's order that the defendant reveal the names of witnesses he intended to call and produce reports and x-rays he intended to introduce in evidence simply required him to disclose information that he would shortly reveal in any event. He was thus required only to decide at a point earlier in time than he would ordinarily have to whether to remain silent or to disclose the information. He lost only the possible tactical advantage of taking the prosecution by surprise at the trial, an advantage that in any event would easily have gone for naught given the probability that the trial court would have granted the prosecution a continuance to prepare a rebuttal.[21]

In the same discussion, Justice Traynor went on to analogize criminal discovery to civil discovery in which pretrial discovery is a "two-way street" for both litigants.

Likewise, nothing is lost of the privilege, and much is gained in orderly procedure, if the defendant is required to give advance notice of the evidence he intends to offer in defense after he has himself received pretrial discovery of the prosecution's case. He can hardly demand pretrial discovery and still insist on reserving his own surprises for the trial. The good coin of discovery gains in value when it is fairly exchanged at the appropriate procedural hours.

．　．　．　．　．　．

The *Jones* case, indicating the two-sideness of the discovery process, suggests that we may be on the way to abandoning our preoccupation with surprise tactics just as we have substantially abandoned the technicalities of pleading that in their time were also overvalued.[22]

Seven years after *Jones* the California Supreme Court decided People v. Pike.[23] In that case, a prosecution for first degree murder, the court held that the state was entitled to pretrial discovery of the names, addresses and expected testimony of defense witnesses. But within a year, the California Supreme Court retrenched somewhat from its leading position on prosecutorial discovery. In Prudhomme v. Superior Court of Los Angeles County,[24] another prosecution for murder, a trial court was restrained from enforcing a discovery order which would have compelled the defendant's attorney to disclose to the prosecution the names, addresses and expected testimony of defense witnesses. Concluding that the "trial court failed to inquire into the incriminatory nature of the information sought,"[25] the Supreme Court of California was apparently influenced by the limited and conditional nature of the provisions of Rule 16(c) of the Federal Rules of Criminal Procedure.[26] The court may also have been cautiously anticipating a negative decision by the United States Supreme Court on the constitutionality of prosecutorial discovery.[27] Thus having substantially advanced the concept of prosecutorial discovery, the California court in *Prudhomme*, after carefully reviewing the policy consideration underlying the privilege against self-incrimination, retreated from its vanguard position.

21. Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.Rev. 228, 247 (1964) (footnote omitted).

22. *Id.* at 248, 250.

23. 71 Cal.2d 595, 78 Cal.Rptr. 672, 455 P.2d 776 (1969).

24. 2 Cal.3d 320, 85 Cal.Rptr. 129, 466 P.2d 673 (1970).

25. 85 Cal.Rptr. at 134, 466 P.2d at 678.

26. Regarding Fed.R.Crim.P. 16(c), the court stated:
Thus, federal rule 16, subdivision (c) is limited to the "reasonable" disclosure of physical evidence; there is no provision authorizing disclosure of names, addresses or expected testimony of defense witnesses. *Id.*, 85 Cal.Rptr. at 131, 466 P.2d at 675–676 (footnote omitted.)

27. Regarding the forthcoming United States Supreme Court decision on notice-of-alibi statutes, the court observed:
Finally, the United States Supreme Court recently granted certiorari in Williams v. Florida (C.A.Fla.) 224 So.2d 406, which had upheld Florida's alibi statute against the claim that it violated the accused's Fifth Amendment rights. 85 Cal.Rptr. at 132, 466 P.2d at 676.

Ironically perhaps the case which may have influenced the California court to draw back in *Prudhomme* was decided the other way by the United States Supreme Court. The Court in Williams v. Florida [28] upheld a Florida notice-of-alibi rule [29] against a claim of fifth amendment privilege, adopting the rationale of Jones v. Superior Court of Nevada County. In that case, the defendant in a robbery prosecution challenged the constitutionality of a Florida rule of criminal procedure which compelled him in advance of trial to provide the prosecution with the names and addresses of prospective alibi witnesses as well as information pertaining to the place where he claimed to have been. Rejecting the defendant's fifth amendment claim, the Supreme Court cited Jones v. Superior Court of Nevada County and Justice Traynor's law review article.[30] Speaking for six members of the court, Justice White concluded that:

> However "testimonial" or "incriminating" the alibi defense proves to be, it cannot be considered "compelled" within the meaning of the Fifth and Fourteenth Amendments.[31]

Accepting Justice Traynor's rationale in *Jones* that pretrial prosecutorial discovery merely accelerated the defendant's mid-trial strategy decisions, Justice White reasoned that:

> [T]he notice-of-alibi rule by itself in no way affected petitioner's crucial decision to call alibi witnesses or added to the legitimate pressures leading to that course of action. At most, the rule only compelled petitioner to accelerate the time of his disclosure, forcing him to di-

vulge at an earlier date information that the petitioner from the begining planned to divulge at trial. Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself.[32]

The holding of the court squarely upheld the prosecution right in advance of trial to obtain the names of witnesses and the location of defendant's alibi against his claim of self-incrimination.

> We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense.[33]

Justice Black, with whom Justice Douglas concurred, forcefully dissented from the majority's holding on the prosecutorial discovery question. According to Justice Black, the Florida notice-of-alibi rule violated the defendant's fifth amendment privilege against self-incrimination, and the majority's decision constituted a dangerous move towards the erosion of a constitutional scheme which imposes upon the prosecution the complete burden of proof. Justice Black reasoned:

> Although this case itself involves only a notice-of-alibi provision, it is clear that the decision means that a State can require a defendant to disclose in advance of trial any and all information he might possibly use to defend himself at trial. This decision, in my view, is a radical and dangerous departure from the his-

---

28. 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

29. For state cases that have upheld notice-of-alibi defense and alibi witnesses requirements, see State v. Stump, 254 Iowa 1181, 119 N.W.2d 210, 219–220, cert. denied, 375 U.S. 853, 84 S.Ct. 113, 11 L.Ed.2d 80 (1963); State v. Baldwin, 47 N.J. 379, 221 A.2d 199, 204–205, cert. denied, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966); People v. Rakiec, 260 App.Div. 452, 23 N.Y.S.2d 607, 612–613 (1940); Commonwealth v. Vec-

chiolli, 208 Pa.Super. 483, 224 A.2d 96, 99 (1966).

30. 399 U.S. at 83, n. 13, 90 S.Ct. at 1897, 26 L.Ed.2d at 451.

31. *Id.* at 84, 90 S.St. at 1897, 26 L.Ed.2d at 451.

32. *Id.* at 85, 90 S.Ct. at 1898, 26 L.Ed.2d at 452.

33. *Id.* at 86, 90 S.Ct. at 1898, 26 L.Ed.2d at 452.

torical and constitutionally guaranteed right of a defendant in a criminal case to remain completely silent, requiring the State to prove its case without any assistance of any kind from the defendant himself.[34]

The dissenting justice disputed the central premise upon which the court based its holding.

> The core of the majority's decision is an assumption that compelling a defendant to give notice of an alibi defense before a trial is no different from requiring a defendant, after the State has produced the evidence against him at trial, to plead alibi before the jury retires to consider the case . . . . That statement is plainly and simply wrong as a matter of fact and law, and the Court's holding based on that statement is a complete misunderstanding of the protections provided for criminal defendants by the Fifth Amendment and other provisions of the Bill or Rights.[35]

The rationale of Justice Black's objection to the majority's reasoning is that a defendant's "pretrial decision cannot be analyzed as simply a matter of 'timing,' influenced by the same factors operating at trial itself."[36] Moreover, Justice Black expressed his concern that the "timing" rationale employed by the Court would predictably be applied to justify the prosecutorial discovery of other information in the defendant's possession.

> The rationale of today's decision is in no way limited to alibi defenses, or any other type or classification of evidence. The theory advanced goes at least so far as to permit the State to obtain under threat of sanction complete disclosure by the defendant in advance of trial of all evidence, testimony, and tactics he plans to use at that trial. In each case the justification will be that the rule affects only the "timing" of the disclosure, and

not the substantive decision itself. This inevitability is clearly revealed by the citation to Jones v. Superior Court . . .[37]

A substantial number of states in addition to Florida have by rule or statute imposed upon the defendant an obligation to disclose his defenses to the prosecution in advance of trial. Almost without exception provisions of this type have been upheld. In reaching that result the courts have grounded their decision on a variety of reasons. Some of the decisions would seem to apply notice-of-alibi provisions without discussing the constitutional considerations. *E.g.*, State v. Baldwin, 47 N.J. 379, 221 A.2d 199, 204–205 (1966); State v. Thayer, 124 Ohio St. 1, 176 N.E. 656, 657 (1931); Commonwealth v. Vecchiolli, 208 Pa.Super. 483, 224 A.2d 96, 99 (1966); State v. Kopacka, 261 Wis. 70, 51 N.W.2d 495, 498 (1952). Still other decisions do not extensively discuss or analyze the constitutional problems but subordinate the issues to matters of procedure. *E.g.*, State v. George, 100 Ariz. 350, 414 P.2d 730, 733 (1966); People v. Shulenberg, 279 App. Div. 1115, 112 N.Y.S.2d 374, 375 (1952).

One state decision which does squarely face the constitutional issues arising out of a notice-of-defense statute is State ex rel. Sikora v. District Court of the Thirteenth Judicial District, 154 Mont. 241, 462 P.2d 897, decided by the Supreme Court of Montana in 1969. *Sikora* arose under the following circumstances. Under Montana law the defendant in a criminal case is required to give advance notice of his intention to interpose the defenses of insanity, self-defense or alibi and to file with the clerk names and addresses of supporting witnesses. Marie Sikora and two others were charged with murder. After an unfavorable ruling on a pretrial motion, the defendants filed petitions with the Supreme Court of Montana challenging the constitutionality of the statute. Address-

---

34. *Id.* at 107–108, 90 S.Ct. at 1909–1910, 26 L.Ed.2d at 480.

35. *Id.* at 108, 90 S.Ct. at 1910, 26 L.Ed.2d at 480–481 (footnote omitted).

36. *Id.* at 110, 90 S.Ct. at 1911, 26 L.Ed.2d at 482.

37. *Id.* at 114, 90 S.Ct. at 1913, 26 L.Ed.2d at 484 (citation omitted).

ing itself first to the notice provision of the statute, the court found no apparent constitutional infirmity. This was so, the court reasoned, since merely giving notice of an intended defense at a procedural stage is ordinarily not incriminating.[38] Turning to the statutory requirement compelling pretrial disclosure of supporting witnesses, the court concluded that not all information obtained from a defendant is privileged under the fifth amendment.[39] Nevertheless, the court recognized that the application of the statute might itself lead to an invasion of the privilege against self-incrimination. Essentially, the court's holding comes down to this: while much of the statute requiring a defendant to make a pretrial disclosure of his defense and his witnesses may not be on its face unconstitutional, the use or application of the statute may lead to an unconstitutional result. The principal significance of *Sikora* is that it points out the difficulty in upholding disclosure provisions when courts do attempt to deal directly with constitutional issues of self-incrimination arising out of compelled pretrial disclosure.

The rather extended review which we have taken furnishes a backdrop against which we are prepared to consider the question in the light of our own state's legal history and our own state's constitution.

In Baker v. City of Fairbanks,[40] we acknowledged our responsibility to depart whenever necessary from constitutional interpretations enunciated by the United States Supreme Court and to develop rights and privileges under the Alaska constitution in accordance with our own unique legal background. In particular we stated:

> While we must enforce the minimum constitutional standards imposed upon us by the United States Supreme Court's interpretation of the Fourteenth Amendment, we are free, and we are under a duty, to develop additional constitutional rights and privileges under our Alaska Constitution if we find such fundamental rights and privileges to be within the intention and spirit of our local constitutional language and to be necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage. We need not stand by idly and passively, waiting for constitutional direction from the highest court of the land. Instead, we should be moving concurrently to develop and expound the principles embedded in our constitutional law.[41]

We are not bound to follow blindly a federal constitutional construction of a fundamental principle if we are convinced that the result is based on unsound reason or logic.

We agree with the general principle that the court has a substantial interest in reducing the element of surprise in criminal proceedings. So to this extent at least we must be concerned with the constitutional administration of criminal justice as well as with efficient management of prosecutions and other trial activities. However, we share Justice Black's concern for the integrity of the privilege against self-incrimination and agree with his conclusion that the "timing" rationale employed by the United States Supreme Court in Williams v. Florida to justify pretrial prosecutorial discovery is unpersuasive.

It is our view that a defendant's mid-trial strategy choices are not identical to his pretrial decisions; nor are the problems and opportunities contemplated by an accused in formulating the course of action to be followed during the presentation of

38. Justice Haswell dissented in part contending that required disclosure of claims of self defense or insanity violated the constitutional privilege against self-incrimination.

39. This has been widely recognized. *E. g.,* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L. Ed.2d 908 (1966); Roberts v. State, 458 P. 2d 340 (Alaska 1969).

40. 471 P.2d 386 (Alaska 1970).

41. *Id.* at 401–402 (footnote omitted).

his defense at trial identical to the same considerations before trial. The weakness of this "timing" rationale has been accurately pointed out by at least one commentator:

> But Justice White's analysis—which equates the defendant's at-trial choice, either to open a source of potentially incriminating information or to forego the opportunity to present a defense, with a parallel choice before trial—confuses one issue and begs a second. Of course, there is some similarity between defendant's pretrial and at-trial choices: in each case the defendant must weigh his critical need to produce exculpatory evidence against the risks of revealing incriminating information. But because of the prosecutor's heavy burden of proof, the defendant is best advised not to open up any source of potentially adverse information unless he feels that the state has in all likelihood proved its case; and it is only after the prosecutor has presented his evidence in court that the defendant can adequately make this judgment. By contrast, there is no way the defendant can know before trial the actual strength of the evidence against him as it will appear to the trier of fact, even if he has himself benefited from extensive discovery; witnesses' testimony under oath and cross-examination may radically depart from their versions of the events as given to the police or defense counsel prior to trial.[42]

Our form of government has imposed an extraordinary burden of proof upon the state in criminal litigation. We think that the appropriate constitutional analysis is not the mere balancing of the state's interests in facilitating efficient law enforcement with the interest of the citizenry in maintaining maximum liberty.[43]

As Justice Black observed:

> A criminal trial is in part a search for truth. But it is also a system designed to protect "freedom" by insuring that no one is criminally punished unless the State has first succeeded in the admittedly difficult task of convincing a jury that the defendant is guilty. That task is made more difficult by the Bill of Rights, and the Fifth Amendment may be one of the most difficult of the barriers to surmount. The Framers decided that the benefits to be derived from the kind of trial required by the Bill of Rights were well worth any loss in "efficiency" that resulted.[44]

Nor are we convinced that discovery in criminal proceedings is completely analogous to discovery in civil litigation; pretrial criminal discovery is not a "two-way street." The analogy to civil discovery fails for a number of reasons. A criminal proceeding from its very inception is quite unlike civil litigation. There is ordinarily available to the prosecution substantial and effective avenues of discovery, such as the investigative resources of the police, access to official records, the power to compel testimony by way of grand jury subpoena which are not equally at the hand of the accused. Even more, as Justice Peters not-

> The argument from expediency contains inherent defects. If an individual right is vested by the Constitution, the overriding demands of governmental efficiency must be of a compelling nature and must be identifiable as flowing from some enumerated constitutional power. To allow expediency to be the basic principle would place the individual constitutional right in a secondary position, to be effectuated only if it accorded with expediency. (footnote omitted)

42. Note, Prosecutorial Discovery Under Proposed Rule 16, 85 Harv.L.Rev. 994, 1007–1008 (1972) (footnote omitted).

43. Cf. Baker v. City of Fairbanks, 471 P.2d 386, 394 (Alaska 1970):
    Substantial reasons of policy must play an important part in any disposition of [the question whether petty offenses fall within the right to a jury trial]. These naturally divide themselves into two major groups. On the one hand, we have considerations of convenience or expediency for the state and its legal subdivisions. It imposes a certain burden upon the machinery of government to make every offense triable by jury. . .

44. Williams v. Florida, 399 U.S. at 113–114, 90 S.Ct. at 1912, 26 L.Ed.2d at 484 (concurring and dissenting opinion).

ed in his dissent in Jones v. Superior Court:

> The simple fact is that our system of criminal procedure is founded upon the principle that the ascertainment of the facts *is* a "one-way street." It is the constitutional right of the defendant, who is presumed to be innocent, to stand silent while the state attempts to meet its burden of proof, that is, to prove the defendant's guilt beyond a reasonable doubt. (emphasis in original) [45]

In our examination of the constitutional issues we found difficulty in accepting the reasoning of Jones v. Superior Court of Nevada County [46] and Williams v. Florida.[47] The dissenting opinions of Justice Peters in *Jones* and Justice Black in *Williams* seem to us more logical and better reasoned.

■ We are therefore persuaded to interpret article I, section 9, of the Alaska constitution more broadly than the United States Supreme Court construed the fifth amendment in *Williams*. We hold that the privilege against compelled self-incrimination under the Alaska constitution prohibits extensive pretrial prosecutorial discovery in criminal proceedings.[48]

The principles we choose to follow in deciding whether or not compelled disclosure of defenses may undermine the privilege against self-incrimination involve a three-fold test: Is the evidence testimonial; is it incriminating; and is it compelled? Applying this three-part rule to

the court's discovery order in the case now before us leads to the conclusion that the order is in a large part constitutionally impermissible.

The discovery order directs petitioner to produce "the names and addresses of all prospective defense witnesses, other than the defendant himself," including "the names of [alibi] witnesses upon whom he intends to rely."

The requirement that petitioner produce a list of names and addresses of witnesses meets the testimonial or communicative criterion of the constitutional analysis. That is, a document containing such facts transmitted from one party to another constitutes a communication of cognizable information from one source to another. Secondly, we are of the opinion that the list of names of prospective witnesses may, at least in some instances, tend to be incriminating. Although the list might not appear to be incriminating on its face, certain of the persons identified in such a list may be known felons, perjurers, accomplices, co-defendants, or individuals under suspicion or police surveillance. Moreover, the police may possess additional incriminating information about some of the witnesses and an accused's reference to such persons may tend to arouse suspicion about his relationship with the witness or may tend to implicate him in the criminal activities of such witness.

■ The incriminating nature of requiring a defendant to disclose the names and addresses of his witnesses prior to

45. Jones v. Superior Court of Nevada County, 58 Cal.2d 56, 22 Cal.Rptr. 879, 884, 372 P.2d 919, 924 (1962) (dissenting opinion). Similarly, in Prudhomme v. Superior Court of Los Angeles County, 2 Cal.3d 320, 85 Cal. Rptr. 129, 134, 466 P.2d 673, 678 (1970) (concurring opinion), Justice Peters stated: Discovery is not a "two-way street" because of the constitutional rights of defendants not accorded the prosecution . . . .

46. 58 Cal.2d 56, 22 Cal.Rptr. 879, 372 P.2d 919 (1962).

47. 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970).

48. At least one legal commentator construes the privilege against self-incrimination under the fifth amendment to the United States Constitution in a similar manner.
    . . . [T]he policies inherent in the fifth amendment privilege against self-incrimination indicate that the prosecutorial discovery provisions of the proposed amendment to [federal criminal] Rule 16 are unconstitutional and should be rejected . . . [and] that the contention that increased defense discovery must be dependent upon increased prosecutorial discovery exaggerates the risk of defense discovery and is unpersuasive.
    Note, Prosecutorial Discovery Under Proposed Rule 16, 85 Harv.L.Rev. 994 (1972).

trial may be more readily understood if placed in another context. We doubt, for instance, whether any court would uphold a statute or rule which would require the defendant to make such disclosure to the police at the station house. It can be said with assurance that such a procedure would be universally found to be a rank violation of the defendant's privilege against self-incrimination. There are, of course, important substantive differences between the investigatory stage of a criminal proceeding and the point of pretrial procedure. Our purpose is using the example is to make clear the incriminating nature of the disclosure. However, we feel the stage of the proceedings is irrelevant to the analysis of this constitutional privilege. The fundamental right not to incriminate one's self should apply at every stage of criminal inquiry or proceedings regardless of judge-made exclusionary or evidentiary rules. As Justice Connor noted in his majority opinion in McConkey v. State:

> The privilege extends not only to answers that would in themselves support a conviction but also to those which might furnish "a link in the chain of evidence" leading to a conviction.[49]

Finally, we agree with petitioner's contention that the names and addresses of the witnesses would by the terms of the order be "compelled" from him in a constitutional sense. Since the production of a list of names and addresses of witnesses is testimonial in nature, incriminating, and compelled by court order, we hold that this portion of the superior court's discovery order violates petitioner's privilege against self-incrimination under article I, section 9, of the Alaska constitution.

■ The discovery order next commands "the production or inspection and copying of any written or recorded statements in defendant's possession of prospective defense or · government witnesses . . . . " Again, we are of the view that written or recorded statements are "testimonial" or "communicative" in nature.

Nor do we think it inconceivable that some, although not necessarily all, of such statements will be incriminating and will tend to furnish a link in the chain of evidence leading to a conviction. The potential incriminating nature of such statements was recognized by the Supreme Court of California in Prudhomme v. Superior Court:

> For example, if a defendant in a murder case intended to call witness A to testify that defendant killed in self-defense, pre-trial disclosure of that information could provide the prosecution with its sole eyewitness to defendant's homicide. Similarly, consider the effect of disclosing the name or expected testimony of witness B, whom defendant intends to call only as a "last resort" to testify that defendant only committed a lesser-included offense.[50]

As in the case of the list of names and addresses of witnesses, we conclude that the witness statements are being "compelled" in a constitutional sense. Indeed, we are of the opinion that among the species of information sought to be discovered by respondent, disclosure of pretrial recorded statements of defense witnesses presents the most serious infringement upon petitioner's privilege against self-incrimination. Hence, we hold that this section of the superior court's discovery order is unconstitutional under article I, section 9 of our constitution.

■ Finally, the discovery order requires petitioner to produce "advance notice of an alibi defense, together with information indicating the place or places defendant claims to have been . . . . " As with the list of witnesses' names, addresses and recorded statements, information going to alibi is, in our opinion, "communicative" or "testimonial." Again, the information is verbal rather than physical, direct rather than indirect, and immediately cognizable. Documents containing written information are simply not fingerprints, voice samples, physical appearances

---

49. 504 P.2d 823, 826 (Alaska 1972) (footnote omitted).

50. *See* Prudhomme v. Superior Court of Los Angeles County, 2 Cal.3d 320, 85 Cal.Rptr. 129, 466 P.2d 673, 677 (1970).

or line-up identifications. Additionally, for the reasons set forth above, we conclude that the information commanded by this portion of the discovery order is "compelled" in a constitutional sense from petitioner. And we are of the view that information pertaining to an alternate location where an accused claims to have been tends to be incriminating and may provide the state with another "link" in its chain of evidence. The information sought could be particularly incriminating if the state were able to demonstrate that no one else in such alternative location had seen the accused during the relevant time period. Further, compelled disclosure of the place the defendant claims to have been is as constitutionally infirm as coerced disclosure of witnesses' names, for it may serve to identify the witnesses. Often the place a defendant will specify will be a residence or a place of business, and in many instances the residents of the home or the proprietor of the place of business will have been present. These persons may be able to provide the police with information probative of the defendant's guilt—information the police might never have found but for the compelled disclosure.

It is no answer to say that the defendant would have to disclose the same facts at trial anyway if he intended to rely on an alibi defense, for the state's case may be so weak that the defendant will choose not to expose himself to further criminal liability by revealing incriminating evidence which was nonetheless exculpatory of the crime for which he stands charged. Hence, we hold that the portion of the superior court's order which commands the production of alibi information concerning the place or places the accused claims to have been also offends petitioner's privilege against self-incrimination under the Alaska constitution.

Whether the mere notice of an alibi defense tends to be incriminating to an accused, however, is more questionable. We find it difficult to conceive how a notice of this particular defense, standing by itself, might tend to be incriminating. Nor has petitioner persuasively demonstrated to us how such notice alone would disclose the substance of his defense theory or any incriminating weaknesses or inconsistencies therein. Rather, we are of the view that the advance notice of an alibi defense is in the nature of any pretrial plea, much like a plea of "not guilty." We find nothing incriminating about this inquiry. Accordingly, we hold that the portion of the superior court's discovery order which calls upon petitioner to furnish respondent with advance notice of an alibi defense does not violate article I, section 9, of the Alaska constitution.[51]

We do not believe that our decision in the instant case will leave respondent in a disadvantaged posture during future prosecutions. Certainly in the past, the state has experienced no substantial inability to conduct prosecutions without the benefit of extensive pretrial discovery. We anticipate that it will continue to perform as effectively in the future. In the event that the state should be unfairly surprised or prejudiced at trial by unexpected defense witnesses, statements or theories, we assume that the trial courts will exercise sound discretion in the regulation of trial proceedings and grant the state a continuance or other appropriate remedy. We recognize that in some cases this may result in delays and inconvenience at trial, but we are not prepared to exchange a fundamental constitutional right for expediency.

We vacate the superior court's pretrial order and remand the case for further proceedings.[52]

---

51. We do not, however, mean to express our view of the constitutionality of portions of Criminal Rule 16(c) or other pretrial prosecutorial discovery orders not presently before us.

52. Due to our holdings and disposition in this petition for review, we decline to reach petitioner's claim that the discovery order violated his right to effective confrontation and cross-examination under article I, section 11 of the Alaska constitution or the sixth and fourteenth amendments to the United States Constitution.