NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| PHILLIP A. DRUMMER,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-13627<br>Trial Court No. 1JU-19-00659 CR<br><br>O P I N I O N<br><br>No. 2773 — March 1, 2024 |

Appeal from the Superior Court, First Judicial District, Juneau, Amy G. Mead, Judge.

Appearances: Susan Orlansky, Reeves Amodio LLC, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge TERRELL.

Miriam Burke obtained a restraining order against Phillip A. Drummer, her ex-boyfriend. The following month, Drummer confronted Burke while she was

walking alongside a roadway and physically assaulted her. Drummer was convicted, following a jury trial, of third-degree assault and violating a protective order.[1]

Drummer raises four claims on appeal. First, Drummer argues that the superior court issued a mid-trial ruling that infringed on his privilege against compelled self-incrimination, as recognized in *Scott v. State*.[2] Shortly before trial, Drummer subpoenaed a domestic violence shelter for records regarding Burke. The shelter moved to quash the subpoena, arguing that the records Drummer requested were privileged under Alaska law. In open court, before ruling on the motion to quash, the court asked Drummer to explain why the records were relevant. Drummer argues that this ruling amounted to unconstitutional compelled self-incrimination. For the reasons explained, we reject Drummer's claim of error.

Second, Drummer argues that the court erred by allowing the State to admit seven text messages that he sent to Burke. Drummer concedes that these messages were relevant, but argues that they were more prejudicial than probative under Alaska Evidence Rule 403. We have reviewed the record, and conclude that the court's ruling was not an abuse of its discretion.

Third, Drummer argues that the court erred by allowing Burke to testify that Drummer had strangled her on ten prior occasions. We find that any error in admitting this evidence under Alaska Evidence Rule 404(b) was harmless because the jury acquitted Drummer of both strangulation-specific offenses.

---

[1] AS 11.41.220(a)(5) and AS 11.56.740(a)(1), respectively. The jury also acquitted Drummer of second-degree assault (AS 11.41.210(a)(1)) and one count of third-degree assault (AS 11.41.220(a)(1)(A)).

[2] Alaska Const. art. I, § 9 ("No person shall be compelled in any criminal proceeding to be a witness against himself."); *Scott v. State*, 519 P.2d 774, 785 (Alaska 1974).

Finally, Drummer contends that the presentence report inaccurately describes his criminal conduct. We agree, and remand this claim to the superior court for additional fact-finding.

*Background facts and procedure*

Drummer and Burke were in a tumultuous on-again, off-again romantic relationship. In February 2019, Burke broke up with Drummer and obtained a protective order that prohibited Drummer from contacting her "in any way, directly or indirectly."

The following month, Burke was walking on the roadside in Juneau when she saw Drummer running towards her. According to Burke, Drummer then threw her into a ditch, pinned her down, and strangled her. Burke believed that Drummer was trying to kill her. After Burke went limp, Drummer stopped assaulting her.

The following morning, Burke called her friend, Sam Hughes, and asked for a ride to AWARE, a domestic violence shelter in Juneau. When Hughes picked Burke up, he noticed dark bruising around her neck.

That night, Drummer sent Burke four text messages in which he repeatedly apologized to Burke and asked for her forgiveness. But the next day, Drummer sent Burke another text message in which he called her vulgar names and threatened her. At a later time, Drummer sent Burke two more texts, referring to her as his enemy and claiming she disrespected him.

One week after the assault, Burke went to the emergency room because of injuries she sustained from Drummer. The emergency doctor diagnosed Burke with abdominal pain. The doctor did not examine Burke's neck at that time because Burke did not disclose that she had sustained a neck injury.

The following day, Burke reported to the police that Drummer had assaulted her. The police obtained a warrant to record a phone conversation between Burke and Drummer. During this recorded call, Burke confronted Drummer about the

assault. Drummer apologized to Burke for hurting her and promised that he would not "put his hands" on her again.

A few months later, Burke saw an ear, nose, and throat doctor due to lingering symptoms from being "choked." The specialist diagnosed Burke with injuries consistent with strangulation.

The State charged Drummer with second-degree assault, two counts of third-degree assault, and violating a protective order.[3] One count of third-degree assault alleged that Drummer recklessly placed Burke in fear of imminent serious physical injury by using his hands or forearms, while the other count alleged that he recklessly caused physical injury to Burke and had two prior qualifying assault convictions.

Three days before trial, Drummer subpoenaed AWARE for documents related to Burke's stay at the shelter. On the first day of trial, AWARE moved to quash the subpoena, asserting that Burke's records were privileged under Alaska law. On the third day of trial, Drummer filed an opposition to AWARE's motion in which he offered to explain his position *in camera*. AWARE opposed Drummer litigating the motion *ex parte*. The court agreed, and ordered Drummer to explain the relevance of the records he subpoenaed in open court. Rather than doing this, Drummer withdrew the subpoena.

At trial, the State admitted the recorded phone call and seven text messages that Drummer sent Burke following the assault. When Burke took the stand, she also testified that Drummer had strangled her ten separate times before the present offense.

The jury convicted Drummer of violating a protective order and third-degree assault under the recidivism theory, but acquitted him of second-degree assault and third-degree assault under the dangerous instrument theory. This appeal followed.

---

[3]   AS   11.41.210(a)(1),   AS   11.41.220(a)(1)(A),   AS   11.41.220(a)(5),   and AS 11.56.740(a)(1), respectively.

*The superior court did not err by requiring Drummer to explain the relevance of the privileged records in open court*

Drummer first argues that the superior court erred by ordering him to explain his theory for why Burke's records from AWARE were relevant in open court, rather than *ex parte*. Drummer argues that this ruling infringed on his privilege against compelled self-incrimination by making him reveal his defense strategy to the State. We begin our analysis by explaining the context for this ruling in more detail.

Three days before Drummer's scheduled trial, Drummer subpoenaed AWARE for records related to Burke's stay at the domestic violence shelter. Specifically, the subpoena ordered the shelter to provide Drummer the following: (1) case notes, documents, and counseling notes related to Burke; (2) documents "showing residential related contracts or agreements"; (3) documents reflecting the days Burke moved into and out of the shelter; and (4) documents related to the "termination" of Burke's residency at AWARE.

On the first day of trial, AWARE moved to quash Drummer's subpoena, arguing that Burke's records were privileged under Alaska law.[4] On the third day of trial, Drummer filed an opposition to AWARE's motion. In Drummer's opposition, he stated that AWARE's records contained information relevant to Burke's "motive, bias and interest" as a witness, and that he could provide more information about their relevance *in camera*. But notably, when Drummer filed his opposition, the State had already called and dismissed Burke as a witness and Drummer's attorney had already cross-examined her.

---

[4]    AWARE argued that the subpoenaed documents were privileged under two statutes: AS 12.45.049 (providing that "[c]onfidential communications between a victim of domestic violence or sexual assault and a victim counselor are privileged") and AS 18.66.200 (providing that, barring statutory exceptions, "a victim or victim counselor may not be compelled, without appropriate consent, to give testimony or to produce records concerning confidential communications for any purpose in a criminal . . . proceeding").

The superior court heard argument from Drummer and AWARE regarding Drummer's request to proffer the relevance of the document *ex parte*. Drummer argued that his right to "not . . . reveal [his] witnesses or [his] defenses" would be violated if he was required to proffer the case-specific relevance of Burke's AWARE records in the prosecutor's presence. AWARE argued that the prosecutor could not intelligently oppose the subpoena unless the prosecutor understood why Drummer believed the privileged records were relevant to his case.

The court denied Drummer's request, explaining that because the State was "entitled to argue on behalf of [Burke's] rights," Drummer must disclose his theory of relevance to the State. Following a short recess, Drummer's attorney withdrew the subpoena without further explanation.

On appeal, Drummer argues that the superior court's ruling infringed on his privilege against compelled self-incrimination, as recognized in *Scott v. State*.[5] The State argues that the ruling did not run afoul of *Scott*, and alternatively, that Drummer waived his right to challenge this ruling by voluntarily withdrawing the subpoena. Because we agree that *Scott* does not apply to the circumstances presented here, we do not reach the State's waiver argument.

In *Scott v. State*, the Alaska Supreme Court considered the circumstances under which pretrial discovery orders infringe on the privilege against compelled self-incrimination. At the State's request, the court ordered the defendant to disclose extensive information to the State before trial, including the names and addresses of prospective defense witnesses, statements of prospective witnesses in the defendant's possession, and detailed information about the defendant's alibi.[6] The defendant argued that the Alaska Constitution's privilege against compelled self-incrimination afforded

---

[5]     Alaska Const. art. I, § 9; *Scott*, 519 P.2d at 785.

[6]     *Scott*, 519 P.2d at 775.

him the "right to refuse to disclose some or all of the evidentiary material" ahead of his trial.[7]

The supreme court agreed, holding that "the privilege against compelled self-incrimination under the Alaska Constitution prohibits extensive pretrial prosecutorial discovery in criminal proceedings."[8] Notably, the court reasoned that "a defendant's midtrial strategy choices are not identical to his pretrial decisions."[9] The supreme court announced a "three-fold test" to determine whether pretrial compelled disclosure undermined the privilege.[10] The test requires courts to determine whether the sought after evidence is (1) testimonial; (2) incriminating; and (3) compelled.[11] Unless all three factors exist, a defendant's privilege against self-incrimination is not undermined under the holding in *Scott*.[12]

Drummer argues that *Scott* applies, and that the court infringed on his privilege by "forcing" him to disclose evidence supporting his defense to the State. However, there are significant factual differences between *Scott* and the present case. In *Scott*, the court ordered the pretrial discovery of nonprivileged information in Scott's possession that the State was not privy to.[13] Conversely, here, the court ordered the defense to explain the relevance of privileged records that Drummer sought to obtain mid-trial from a third party. The procedural postures of these cases differ regarding

---

[7]  *Id.* at 777.

[8]  *Id.* at 785.

[9]  *Id.* at 783.

[10]  *Id.* at 785.

[11]  *Id.*

[12]  *Gipson v. State*, 609 P.2d 1038, 1043-44 (Alaska 1980); *see Scott*, 519 P.2d at 785-86.

[13]  *Scott*, 519 P.2d at 775.

when the request was made (pretrial versus midtrial), who made the request (the State versus the defendant), and whose records were requested (the defendant versus a third party). Additionally, because Drummer was seeking to subpoena documents *privileged* under Alaska law, the State and AWARE had an interest in complying with the law and protecting Burke's right to privacy.[14]

Due to these differences, we decline to extend the holding in *Scott* to the facts in the present case. Moreover, even if we did extend the *Scott* holding to this case, Drummer has failed to explain how proffering the relevance of the AWARE records he sought was both incriminatory and testimonial in nature. For these reasons, we reject Drummer's claim that the superior court infringed on his privilege against compelled self-incrimination.

*The superior court did not abuse its discretion by allowing the State to admit Drummer's text messages to Burke*

Next, Drummer claims that the superior court abused its discretion by allowing the State to admit seven text messages that he sent Burke following the roadside assault. Drummer argues the messages were inadmissible under Alaska Evidence Rule 403 because they were more unfairly prejudicial than probative.

The evening after the assault, Drummer texted Burke four messages in which he effusively apologized to her. For example, in the fourth text message, Drummer wrote:

> Hey I wanted to apologize [to] you again and hope that you find the forgiveness in your heart and fuck with me again even though I don't deserve it. [I'm] sorry bay bay I was out of line. Please forgive me!

Burke testified that she believed Drummer was apologizing for strangling her and throwing her in a ditch.

---

[14] AS 12.45.049; AS 18.66.200.

The following day, Drummer sent Burke a fifth text message in which he called Burke derogatory names (including a "whore" and an ethnic slur) and threatened both Burke and Sam Hughes. In the last two text messages, Drummer accused Burke of "disrespecting" him and called her a "bitch."

The State moved to admit all seven text messages at trial, arguing that the apologetic messages were probative of Drummer's consciousness of guilt, and the remaining messages were probative of Drummer's temper and how he treats Burke when he feels disrespected. The trial court ruled, over Drummer's objection, that the messages were admissible under Evidence Rule 403.

Under Evidence Rule 403, relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice.[15] As the supreme court has explained, trial courts are afforded "broad discretion" under the law to apply this balancing test.[16] Thus, this Court will only find error in a court's application of Evidence Rule 403 "where a clear abuse of discretion has been shown."[17]

Applying this standard, we find that the superior court did not err in admitting Drummer's text messages to Burke. These text messages, which alluded to the assault and demonstrated the complex dynamics underlying Drummer and Burke's relationship, were relevant and probative to the State's case. We are mindful that some of the seven text messages contained cumulative information, and that one message contained an ethnic slur directed at Burke. However, we find that the superior court did

---

[15] The commentary to Alaska Evidence Rule 403 defines "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Alaska R. Evid. 403 cmt. para. 5.

[16] *Bluel v. State*, 153 P.3d 982, 986 (Alaska 2007).

[17] *Johnson v. State*, 889 P.2d 1076, 1081 (Alaska App. 1995).

not abuse its "broad" discretion by concluding that the probative value of this evidence outweighed the risk that the jury would convict Drummer on an improper basis.[18]

*The superior court did not commit reversable error by allowing Burke to testify that Drummer had strangled her in the past*

Drummer next argues that the superior court erred by allowing the State to admit evidence that Drummer had strangled Burke ten times before.

The State argued that this evidence of past strangulations was admissible under Alaska Evidence Rule 404(b)(1) and Alaska Evidence Rule 404(b)(4) to establish past similar acts of violence in Drummer and Burke's romantic relationship, and to contextualize Burke's fear that Drummer was trying to kill her.[19]

The superior court analyzed the factors in *Bingaman v. State*[20] and ruled, over Drummer's objection, that Burke could testify about the past strangulations.[21] However, the court restricted Burke's testimony to "general statements" that the strangulations occurred, and prohibited the State from eliciting any details from Burke about the incidents. The State complied with these limitations during Burke's testimony. The court also issued a jury instruction cautioning that Drummer should not be convicted on the sole basis of his "uncharged acts."

---

[18]  *See Bluel*, 153 P.3d at 986.

[19]  Evidence Rule 404(b)(1) provides: "Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[20]  *Bingaman v. State*, 76 P.3d 398, 415-16 (Alaska App. 2003) (holding that propensity evidence may only be admitted under Evidence Rules 401(b)(2)-(4) if the trial court first weighs six factors).

[21]  It is unclear from the superior court's ruling whether it admitted this evidence under Evidence Rule 404(b)(1), Evidence Rule 404(b)(4), or both provisions.

In Drummer's case, we need not decide whether Burke's testimony of the past strangulations was error because the jury's verdict rendered any error in admitting this evidence harmless. At trial, the State argued that Drummer committed second-degree and third-degree assault when he strangled Burke with his hands. The State also argued that Drummer committed a separate count of third-degree assault when he recklessly caused physical injury to Burke more generally.

The jury acquitted Drummer of the two strangulation-specific assaults, but convicted Drummer of the more generalized assault. Because the jury acquitted Drummer of the counts specific to strangulation, the jury did not employ the propensity inference that because Drummer had strangled Burke ten times before, he must have strangled her on the roadside. Drummer's defense was thus not prejudiced, and any error in permitting Burke's testimony was harmless.

### Why a remand is warranted so the superior court can evaluate disputed facts in the presentence report

Drummer next challenges the presentence report, claiming that it inaccurately states that he strangled Burke. The State argues that Drummer cannot raise this argument on appeal because he did not object to the report's accuracy in the superior court.

Following trial, the jury acquitted Drummer of assault under the theory that he strangled Burke, but convicted him under the more general theory that he recklessly injured Burke. These acquittals suggest that the jury either concluded that Drummer did not strangle Burke, or concluded that the strangulation was not as serious as the State alleged. Drummer's presentence report does not reflect this nuance. Rather, the report states that Drummer strangled Burke until she "blacked out" — a narrative derived not from the evidence at trial, but from Burke's unsworn statement to the police.

Under Alaska Criminal Rule 32.1(d)(5), a defendant must provide notice to the court of any objection to the presentence report, the basis for the objection, and

information that refutes the alleged inaccuracy. Ahead of sentencing, Drummer asked the superior court to "disregard" the offense narrative because it conflicted with the evidence at trial and the jury's findings. We acknowledge that Drummer's objection could have been clearer. However, Drummer objected in the context of the jury's verdict acquitting him of assault under the theory that he strangled Burke. Given this context, which the court was aware of, we find that Drummer adequately noticed the basis of his objection and the information that refutes the alleged inaccuracy.

Once a defendant objects to factual assertions in the presentence report, Criminal Rule 32.1(f)(5) requires that the court evaluate the disputed assertions and modify the report, if warranted. Accordingly, we remand this case so the superior court can adjudicate, pursuant to the procedures in Criminal Rule 32.1(f)(5),[22] whether the presentence report's narrative is consistent with the evidence presented at trial.

*Conclusion*

We AFFIRM Drummer's convictions and sentence, but REMAND his case to the superior court for further proceedings related to the presentence report. We do not retain jurisdiction.

---

[22] Alaska Criminal Rule 32.1(f)(5) provides, in relevant part: "The court shall enter findings regarding any disputed assertion in the presentence report. Any assertion that has not been proved shall be deleted from the report; any assertion that has been proved only in part shall be modified in the report. Alternatively, if the court determines that the disputed assertion is not relevant to its sentencing decision so that resolution of the dispute is not warranted, the court shall delete the assertion from the report without making any finding."