## COMMONWEALTH vs. PATRICK JOHN DURHAM.

Suffolk. November 10, 2005. - March 14, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* Discovery, Reciprocal discovery, Confrontation of witnesses, Assistance of counsel. *Attorney at Law,* Work product. *Constitutional Law,* Confrontation of witnesses, Self-incrimination, Assistance of counsel, Fair trial. *Fair Trial. Moot Question.*

This court addressed the issue presented in a case that was moot, where the issue was fully briefed and raised matters of considerable importance to the pretrial preparation of criminal cases, and where the issue was occurring on a frequent basis in the trial courts and uncertainty existed on the issue. [217]

In a criminal trial, the judge's order that directed the defendant, as part of the reciprocal discovery authorized by Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979), to furnish the Commonwealth with "statements" of witnesses whom the Commonwealth intended to call at trial and which were in the possession, custody, or control of the defendant or his attorney did not exceed the scope of rule 14 (a), where nothing in rule 14 (a) (2) limited the scope of discovery to include only witnesses whom the disclosing party intended to call at trial during the presentation of its case-in-chief, and the same could be said for their "statements" [217-221]; moreover, the order did not violate the work product provision contained in rule 14 (a) (5) [221-222], and this court declined to invalidate the order on the basis of noncontrolling and conflicting authority in other jurisdictions predicated on quite different discovery practices and principles [222-224]; finally, there was no merit to the defendant's contention that the order was unworkable [224]. MARSHALL, C.J., dissenting, with whom IRELAND, J., joined. CORDY, J., dissenting, with whom MARSHALL, C.J., and IRELAND, J., joined.

In a criminal trial, the judge's order that directed the defendant, as part of the reciprocal discovery authorized by Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979), to furnish the Commonwealth with "statements" of witnesses whom the Commonwealth intended to call at trial and which were in the possession, custody, or control of the defendant or his attorney did not violate the defendant's right, under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, to confront the witnesses against him through cross-examination, where the statements the defendant would have had to turn over under the order were presumably already known to the Commonwealth's witnesses who gave them [224-226]; further, the order did not violate the defendant's privilege against self-incrimination under either the Fifth Amendment to the United States Constitution or the broader protections of art. 12, in that the

defendant was not being compelled to state anything against himself [226-227]; finally, the order did not diminish, in any legally significant way, the defendant's right to be represented by effective counsel or to have a fair trial [227-229]. MARSHALL, C.J., dissenting, with whom IRELAND, J., joined. CORDY, J., dissenting, with whom MARSHALL, C.J., and IRELAND, J., joined.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 1, 2005.

The case was reported by *Cordy,* J.

*James L. Sultan (Jonathan P. Harwell* with him) for the defendant.

*Paul B. Linn,* Assistant District Attorney (*David E. Meier,* Assistant District Attorney, with him) for the Commonwealth.

The following submitted briefs for amici curiae:

*Matthew Feinberg & Peter B. Krupp* for National Association of Criminal Defense Lawyers & another.

*Stephanie Page & Brownlow M. Speer,* Committee for Public Counsel Services, for Committee for Public Counsel Services.

GREANEY, J. In issue is the order of a Superior Court judge that directed the defendant, as part of the reciprocal discovery authorized by Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979),[1] to furnish the Commonwealth with "statements" of witnesses whom the Commonwealth intended to call at trial and which were in the possession, custody, or control of the defendant or his attorney. The order required that the "statements" were to be provided to the Commonwealth within seven days of defense counsel's receipt of a list of civilian witnesses whom the Commonwealth intended to call at trial. The order pertained to the defendant's indictment for murder in the first degree in connection with the brutal stabbing of a fourteen year old girl in July, 1981. (Although the defendant immediately was a suspect in the victim's death, he was not charged with her murder until Febru-

---

[1] We apply the version of Mass. R. Crim. P. 14, 378 Mass. 874 (1979), that was in effect when the defendant was indicted in 2000. While rule 14 has since been amended, the amendments apply only "to those cases initiated (by indictment or complaint) on or after the effective date [September 7, 2004]." 442 Mass. 1501 (2004). See Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004). See also Mass. R. Crim. P. 14, as amended, 444 Mass. 1501 (2005).

ary, 2000, after deoxyribonucleic acid [DNA] test results linked him to the crime.) The defendant, while decision was pending, entered a guilty plea to manslaughter and has been sentenced. We conclude that the appeal should be decided. We find the order lawful; the discovery required is permitted by the rule and violates no Federal or State constitutional right of the defendant.

The procedural background is as follows. In the parties' pretrial conference report, executed pursuant to Mass. R. Crim. P. 11, 378 Mass. 862 (1979), the defendant agreed to provide specified reciprocal discovery to the Commonwealth, including "[a]ny written or recorded statements of any witness, excluding the [d]efendant[,] in the possession, custody or control of [d]efense [c]ounsel or agents" that "the [d]efendant intends to use for the case in chief." The defendant later filed a motion for additional discovery, seeking the names of all the Commonwealth's prospective trial witnesses and an opportunity to inspect all documentary and physical evidence that the Commonwealth intended to offer at trial. A Superior Court judge allowed the motion, contingent on the defendant providing the same discovery to the Commonwealth, and limiting the obligation to such evidence that pertained to each party's case-in-chief.

Subsequently, the Commonwealth filed a motion for additional reciprocal discovery. In its motion, the Commonwealth sought, among other requests, the disclosure of any written or recorded statement of any prospective witness, including potential witnesses for the Commonwealth, that the defendant intended to offer at trial for any purpose, including for impeachment. A different Superior Court judge allowed the Commonwealth's motion in part, but reserved judgment on the above-specified request. Later, in a written memorandum of decision and order, the judge allowed the request.[2] The judge

---

[2]The judge ordered the defendant to:

"[P]roduce and provide the Commonwealth with 'statements' of civilian witnesses that are in the possession, custody or control of the defendant or his attorney, and that constitute statements of witnesses the Commonwealth intends to call at trial, all in accordance with the discussion of the term 'statements' set out in this memorandum of decision

took care to identify what materials were meant by the term "statements," explaining:

> "The term 'statement' is defined in Mass. R. Crim. P. 14 (d),[3] and also Mass. R. Crim. P. 23 (a)[4] . . . . The defendant's obligations to produce 'statements' of Commonwealth witnesses is limited to written statements that have been adopted or approved by the witness, statements that have been recorded or transcribed, or any statements that may be contained in written reports of an investigator or other person and constitute verbatim quotes or declarations . . . . Work product, as described in Mass. R. Crim. P. 14 (a) (5),[5] and in [*Commonwealth* v. *Bing Sial Liang*, 434 Mass. 131, 137-140 (2001)], and which may include attorney or an investigator's notes and impressions concerning witness statements, need not be disclosed. . . . [In addition,] consistent with the defendant's privilege against self-incrimination, to the extent that any 'statements' of

and order. The defendant is to produce such statements within seven days of defense counsel's receipt of a list of Commonwealth civilian witnesses that the Commonwealth in good faith actually intends to call to testify at trial . . . ."

[3]Rule 14 (d) defines the term "statement" as "(1) a writing made by a person having percipient knowledge of relevant facts and which contains such facts, signed or otherwise adopted or approved by such person; or (2) a stenographic, mechanical, electrical, or other recording, or transcription thereof, which is a substantially verbatim recital of an oral declaration and which is recorded contemporaneously with the making of the oral declaration."

[4]Rule 23 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 893 (1979), defines the term "statement" as "(1) a writing måde by a witness or another and signed or otherwise adopted or approved by such witness; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral declaration made by a witness and which is recorded contemporaneously with the making of the oral declaration; (3) a declaration, however taken or recorded, or a transcription thereof, made by a witness to a grand jury; or (4) those portions of a written report which consist of the verbatim declarations of a witness in matters relating to the case on trial."

[5]The provision relating to work product provides: "This rule does not authorize discovery by a party of those portions of records, reports, correspondence, memoranda, or internal documents of the adverse party which are only the legal research, opinions, theories, or conclusions of the adverse party or his attorney and legal staff, or of statements of a defendant, signed or unsigned, made to the attorney for the defendant or his legal staff." Mass. R. Crim. P. 14 (a) (5).

> Commonwealth witnesses in his possession include information concerning the identity of any person that (a) all the discovery produced to date indicates the Commonwealth is not aware of, and (b) is not a person the defendant himself intends to call as a witness at trial, the defendant is not required to provide that portion of the statement to the Commonwealth."

As can be seen, the judge's order did *not* limit the required disclosure to statements that the defendant could use for impeachment purposes. Rather, the order is broader, compelling the defendant to furnish statements that the Commonwealth also possibly could use in its case-in-chief or that the defendant might use in establishing a defense.

The defendant moved for reconsideration and for a protective order; both requests were denied. The judge, however, stayed the discovery order at the defendant's request to permit him to seek relief in the county court under G. L. c. 211, § 3. A single justice reserved and reported the case, without decision, to the full court. He directed the parties to file with the full court a written stipulation reflecting their understanding of the order.

The stipulation was reviewed and approved by the judge. The stipulation clarified that, under the order, (1) the defendant was only required to turn over statements of Commonwealth witnesses that he intended to use at trial, including statements to third parties unconnected to the defendant's case; (2) the defendant was not required to disclose statements of a witness for the Commonwealth unless the Commonwealth previously supplied discovery (in the form of grand jury minutes, police reports, witness statements or some other form) containing or describing that witness's statements; (3) to the extent that any statements of the Commonwealth's witnesses included information concerning the identity of any person whom discovery produced to date indicated that the Commonwealth was unaware of, and whom the defendant did not intend to call as a witness at trial, the defendant was not required to provide that portion of the statement to the Commonwealth; and (4) the Commonwealth was permitted to disclose to its witnesses prior to trial the substance of the witnesses' respective statements that were obtained by the defendant. The defendant challenged the

order only insofar as it required him to turn over statements of intended witnesses for *the Commonwealth* (not intended witnesses for the defense).

1. Because the defendant's guilty plea and sentence resolves the indictment, the case is moot. See *Commonwealth* v. *Pagan,* 445 Mass. 315, 317 & n.1 (2005). We nonetheless address the issue raised. The issue is fully briefed and raises matters of considerable importance to the pretrial preparation of criminal cases. Several amici have expressed their views. We have been advised that the issue is occurring on a frequent basis in the trial courts and uncertainty exists whether an order similar to the one in issue can be entered. See *id.* at 317; *Delaney* v. *Commonwealth,* 415 Mass. 490, 492 (1993); *Commonwealth* v. *Yameen,* 401 Mass. 331, 333 (1987), cert. denied, 486 U.S. 1008 (1988).

2. The defendant's arguments seeking to overturn the order were four: (a) the order exceeds the scope of rule 14 (a) (3); (b) the order is barred by the work product exception to rule 14; (c) the order directs the production of discovery that is not allowed in the Federal Courts or by courts in most other States; and (d) the order is unworkable. We address each argument.

(a) After listing mandatory discovery for the defendant, rule 14 (a) (2) outlines discretionary discovery for the defendant as follows:

> "Upon motion of a defendant made pursuant to [Mass. R. Crim. P. 13, 378 Mass. 871 (1979)], the judge may issue an order of discovery requiring that the defendant be permitted to discover, inspect, and copy any material and relevant evidence, documents, statements of persons, or reports of physical or mental examinations of any person or of scientific tests or experiments, within the possession, custody, or control of the prosecutor or persons under his direction and control. The judge may also order the production by the Commonwealth of the names and addresses of its prospective witnesses and the production by the probation department of the record of prior convictions of any such witness."

It is further provided in rule 14 (a) (3) (A) for reciprocal discovery:

"If the judge grants discovery or inspection to a defendant pursuant to subdivision (a) (2) of this rule, the judge may upon motion by the Commonwealth condition his order by requiring the defendant to permit the Commonwealth to discover, inspect, and copy any material and relevant evidence discoverable under subdivision (a) (2) which the defendant intends to use at trial, *including the names, addresses, and statements of those persons whom the defendant intends to use as witnesses at trial*" (emphasis added).

The defendant relied on the emphasized language to argue that the rule applies only to information about defense witnesses called during the defendant's case-in-chief, noting the obvious, that a prosecution witness is not the equivalent of a defense witness.

The ordered discovery is permitted by the rule, which cannot, as the defendant sought to do, be read in isolation. Under rule 14 (a) (3) (A), the judge was authorized to order the defendant to disclose "any material and relevant evidence discoverable under subdivision (a) (2) which the defendant intends to use at trial." Evidence discoverable under rule 14 (a) (2) includes "any material and relevant evidence, documents, [or] statements of persons . . . within the possession, custody, or control of [the adversary]." Nothing in rule 14 (a) (2) limits the word "persons" to include only witnesses whom the disclosing party intends to call at trial during the presentation of its case-in-chief. Such a limitation would be contrary to the fact that "persons," characterized here as prospective witnesses, "belong neither to the Commonwealth nor to the defence. They are not partisans and should be available to both parties in the preparation of their cases." *Commonwealth* v. *Balliro*, 349 Mass. 505, 516 (1965). See *Commonwealth* v. *Adkinson*, 442 Mass. 410, 416 (2004). The same can be said for their "statements," a point forcefully made in *Commonwealth* v. *Reynolds*, 429 Mass. 388, 397-398 (1999), where a conceptually similar (but not contested) pretrial discovery order was enforced, in the following terms: "Allowing the defendant to withhold [the ordered] evidence [in the form of written or recorded statements] against a witness who is certain to be called to testify would undermine

the discovery rules and allow attorneys to return to trial by ambush. Theatrics do not accord with our discovery process."

The language emphasized in rule 14 (a) (3) (A), on which the defendant relied, thus presents only one example of the type of evidence discoverable under the rule. Cf. *Doe* v. *Superintendent of Schs. of Worcester*, 421 Mass. 117, 127-128 (1995) (interpreting word "including" as word of enlargement and not one of limitation). This interpretation — that the word "including" bespeaks an expansion rather than a restriction — is supported by the fact that the substance of subdivision (a) (2) of the rule "broadly parallels" a similar rule in New Jersey, see N.J. R. Crim. P. 3:13-3 (West 2005),[6] which permits the type of discovery ordered in this case. Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure at 1470 (LexisNexis 2005).[7]

In his dissent, Justice Cordy contends that allowing the Com-

---

[6]Rule 3:13-3 (d) (3) and (4) of the New Jersey Rules Governing Criminal Practice provides:

"(d) Discovery by the State. A defendant shall permit the State to inspect and copy or photograph the following relevant material if not given as part of the discovery package under section (b):

". . .

"(3) the names and addresses of those persons known to defendant who may be called as witnesses at trial and their written statements, if any, including memoranda reporting or summarizing their oral statements; [and]

"(4) written statements, if any, including any memoranda reporting or summarizing the oral statements, made by any witnesses whom the State may call as a witness at trial."

N.J. R. Crim. P. 3:13-3 (d) (3), (4) (West 2005). Under the rule, the State has access to such statements only if the defendant intends to use them at trial. *State* v. *Williams*, 80 N.J. 472, 478 (1979).

[7]Noting the different language in the New Jersey rule, which we fully recognize and have set forth in note 6, *supra*, Justice Cordy, in his dissent, takes issue with the statement that rule 14 "broadly parallels" a similar rule in New Jersey. Ignoring that the quoted language ("broadly parallels") appears in the text of the ·Reporters' Notes, Justice Cordy intimates that we alone have drawn this conclusion. He entirely misses the significant point — that subdivision (a) (2) of rule 14 "broadly parallels" the New Jersey rule *in substance*, thus making the interpretation of the New Jersey rule particularly persuasive. See *post* at 235 n.4. The fact that the drafters of rule 14 chose different

monwealth to discover any statements beyond the statements of witnesses whom the defense intends to call at trial makes the final portion of rule 14 (a) (3) (A) mere "surplusage." *Post* at 235. To the contrary, it resolves what would otherwise have been a potential ambiguity in the rule, an ambiguity that would have led to arguments that the defense did not have to turn over the statements of its own witnesses. Where rule 14 (a) (2) allowed the defendant, by motion, to obtain from the Commonwealth any "statements of persons," and rule 14 (a) (3) (A) in turn allowed the Commonwealth to obtain from the defendant the same items covered by rule 14 (a) (2) if the defense intended to "use [those items] at trial," the rule would allow the Commonwealth to discover from the defense "statements of persons" that the defense intended to "use at trial." Left without further explication, the argument could be made that rule 14 (a) (3) (A) did not provide for the discovery of statements of defense witnesses because the defense did not intend to "use" the "statements" of its witnesses — it had intended only to present their live testimony. Addition of the phrase "including the names, addresses, and statements of those persons whom the defense intends to use as witnesses at trial," rule 14 (a) (3) (A), resolves that potential ambiguity and precludes such an argument. It does not, however, operate to restrict the scope of rule 14 (a) (3) (A) read as a whole. Should there have been other "statements" that the defendant had intended to use at trial, they would have been discoverable.

In addition, Justice Cordy's dissent misinterprets the import of the revised Reporters' Notes to the 2004 version of the rule. *Post* at 244 n.10. See Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure (LexisNexis 2005). Under the 2004 version of Mass. R. Crim. P. 14 (a) (1) (A) (vii), as appearing in 442 Mass. 1518 (2004), the Commonwealth must produce as part of its automatic discovery "statements of persons the Commonwealth intends to call as witnesses." Absent a motion by the defense, the Commonwealth is not required to produce the broader category of any and all "statements of persons." Similarly, the automatic discovery that the

language from that appearing in the New Jersey rule to effectuate its essence does not alter this point.

defendant must produce is limited to "statements of those persons whom the defendant intends to use as witnesses at trial." Mass. R. Crim. P. 14 (a) (1) (B), as appearing in 442 Mass. 1518 (2004). The revised Reporters' Notes merely reiterate that *automatic* discovery does not extend to statements that the defense intends to use for purposes of cross-examination, and that automatic discovery of witness statements is the same for both sides — they must each produce the statements of the witnesses they intend to call. The Reporters' Notes then recite that "[d]iscovery of other statements must be pursued by motion." Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure, *supra* at 1457. Nothing in the Notes suggests that other statements the defendant intends to use may not be discovered by the Commonwealth. The Notes merely make clear that any such discovery requires a motion, and that it does not come within the category of automatic discovery.

These observations aside, there is no need to engage in a lengthy exegesis on the subject. To the extent that there may be ambiguity (and we do not perceive any), the problem yields to the principle that we are the final arbiter of what the rule means and permits,[8] and we conclude that it permits the ordered discovery, unless one of the defendant's remaining arguments has enough force to persuade us to reach a contrary result. We turn now to those arguments.

(b) The order does not violate the work product provision contained in rule 14 (a) (5). See note 5, *supra.* The order expressly does not apply to work product contemplated by rule 14 (a) (5) and as described in *Commonwealth* v. *Bing Sial Liang,* 434 Mass. 131, 138-140 (2001), and cases cited (extending protection of notes of victim advocates, including notes from interviews with complaining witnesses, where such material is inextricably commingled with advocate's work product). Contrary to the Federal doctrine, our work product doctrine "favors liberal discovery." *Commonwealth* v. *Paszko,* 391 Mass.

---

[8]To note the obvious, we are not construing a statute. Justice Cordy's reliance on the principles stated in *Dowell* v. *Commissioner of Transitional Assistance,* 424 Mass. 610 (1997), concerning the construction of statutes, is inappropriate. See *post* at 236.

164, 188 (1984). As such, and in light of the precise terms of the order, we decline to extend the work product doctrine to encompass a situation, almost impossible to identify, where a witness statement "seem[s]" to reveal the mental processes of the defense "by virtue of the areas covered."

(c) The defendant correctly pointed out that Fed. R. Crim. P. 16 (b) (2)[9] precludes pretrial discovery of statements by *any* witness made to the defendant or to the defendant's attorney or agent. He also pointed out that several States have imposed the same, or similar type of, restriction. See Del. R. Crim. P. 16 (Michie 2004); Idaho Crim. R. 16(g) (Michie 2005); Kan. Crim. P. Code § 22-3212(b) (West 2005); N.D. R. Crim. P. 16(b)(2) (West 2005); S.D. Codified Laws § 23A-13-14 (West 2005); Va. Supreme Court R. 3A:11 (LexisNexis 2005); W. Va. R. Crim. P. 16(a)(2), 26.2 (LexisNexis 2004); Wyo. R. Crim. P. 16(a)(2), 26.2 (LexisNexis 2005).

The restriction reflects a broad work product doctrine under Federal law, and in other States, that has been rejected in Massachusetts in favor of "liberal discovery." See *Commonwealth v. Paszko, supra* at 187-188. In many of these jurisdictions, the restriction has been a consequence of rules, or practices, that do not require, or provide for, the discovery of witness lists. See Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report, 68 Wash. U. L.Q. 1, 13 (1990) (explaining that concern for witness intimidation "has proved a

---

[9]Rule 16 (b) (2) of the Federal Rules of Criminal Procedure provides:

"(2) Information Not Subject to Disclosure. Except for scientific or medical reports, Rule 16 (b) (1) does not authorize discovery or inspection of:

"(A) reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense; or

"(B) a statement made to the defendant, or the defendant's attorney or agent, by:

"(i) the defendant;

"(ii) a government or defense witness; or

"(iii) a prospective government or defense witness."

major obstacle to discovery of witness lists [and has] stood in the way of pretrial disclosure of witness statements"). See also 4 W.R. LaFave, J.H. Israel, & N.J. King, Criminal Procedure § 20.3(i), at 873 (2d ed. 1999) (identifying several justifications articulated for completely barring discovery of witness statements, including work product protection, like treatment with respect to witness lists, and ample opportunity to challenge testimony at trial). However, our rule, see rule 14 (a) (2) and (a) (3), permits pretrial discretionary and reciprocal discovery of the names and addresses of prospective witnesses for the Commonwealth and the defense, and in Massachusetts, a defendant may interview prospective witnesses, including "prospective witnesses held in the custody of the Commonwealth." *Commonwealth* v. *Balliro*, 349 Mass. 505, 516 (1965). The restriction is not universal. See, e.g., Minn. R. Crim. P. 9.02 subd. 1(3)(b) (West 2005); N.J. R. Crim. P. 3:13-3(d)(4); Wash. Superior Court Crim. R. 4.7(b)(1) (West 2004). See also *State* v. *Culkin*, 791 S.W.2d 803, 811 (Mo. Ct. App. 1990 (rejecting defendant's argument that judge erred in ordering defendant's attorney to produce to State his notes of interview with victim); *State* v. *Chagnon*, 139 N.H. 671, 672, 677-678 (1995) (concluding that contents of defense investigator's report, namely, statement of victim, was not work product and was discoverable in judge's discretion under general rule of reciprocal discovery); *People* v. *Perez*, 171 Misc. 2d 75, 78 (N.Y. Sup. Ct. 1996) (holding that prosecution was entitled to pretrial discovery of all statements, including those tape recorded, handwritten, or stenographically transcribed, of its witnesses that were obtained by defense); *State* v. *Young*, 94 Or. App. 683, 685 n.1, 689 (1989) (concluding that, under discovery rule obligating defense counsel to disclose "written or recorded statements or memoranda of any oral statements of such persons other than the defendant" and which the defendant "intends" to offer at trial, defense counsel must give timely discovery to prosecutor when defense counsel can "reasonably predict" that she will use evidence to impeach prosecution's witness); *State* v. *Yates*, 111 Wash. 2d 793, 802 (1988) (affirming order that "all recorded or written statements of potential prosecution witnesses which were taken by defense counsel or the defense investigator be provided to the State").

In view of the text of our rule, and its provisions permitting the discovery of witness lists, together with the fact that our work product doctrine "favors liberal discovery," *Commonwealth* v. *Paszko, supra*, we decline to invalidate the order on the basis of noncontrolling and conflicting authority predicated on quite different discovery practices and principles. Our conclusion comports with the "significant liberalization of criminal discovery," and the notion that "[t]he proper guide to discovery practices should [be] the degree to which discovery will enhance the reliability of factfinding." Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report, *supra* at 2-3, 8.

(d) The defendant argued that the order was unworkable because it would force him to choose between disclosing only limited information from the statements that he was certain he would use at trial, thereby forfeiting other material, or disclosing all information from the statements that he would potentially use, thereby possibly disclosing incriminating evidence and material that he would not actually use at trial. The defendant's concern about disclosure of incriminating evidence is unfounded. Rule 14 (a) (3) (A) requires production of statements only that the defendant "intends to use at trial." Incriminating evidence (on the crime charged) is not the sort of evidence that competent defense counsel "intends to use at trial." Without the accelerated disclosure, the utility of the information to the prosecutor would be limited and the veracity of the information would be untested. The order is no less "workable" than other discovery obligations imposed on the parties when the defendant obtains discretionary discovery, thus invoking the reciprocity provision. The order may require counsel to make strategic choices in the trial process, but that consideration provides no basis to invalidate the order. In the end, "[b]road discovery makes for a fair trial and enhances the likelihood that the truth will come out." Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report, *supra* at 15.

3. The defendant argued that the order violates Federal and State constitutional protections by impairing his right to confront the witnesses against him, his privilege against self-incrimination, and his right to a fair trial and the effective assistance of counsel.

(a) "Both the Sixth Amendment [to the United States Constitution] and art. 12 [of the Massachusetts Declaration of Rights] guarantee a criminal defendant's right to confront the witnesses against him through cross-examination." *Commonwealth* v. *Miles*, 420 Mass. 67, 71 (1995). There is no question that effective cross-examination is an important safeguard of liberty and a valuable tool for testing the reliability of evidence, thereby ensuring a truthful verdict. We also have no disagreement with the view that, as a tactical matter, surprise can be an important element of effective cross-examination. But neither of these propositions is affected by the order to a degree where it can be held that the defendant's constitutional right to confront witnesses against him would be violated.

The statements the defendant would have had to turn over under the order were presumably already known to the Commonwealth's witnesses who gave them. The defendant, if appropriate, might have received reciprocal discovery of written statements obtained by the Commonwealth from defense witnesses. As such, both sides are given a fair opportunity to investigate the veracity of statements and are not faced with confronting them for the first time at trial. See *United States* v. *Nobles*, 422 U.S. 225, 241 (1975) ("The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth").[10] Indeed, such investigation might even have revealed beneficial information for the defense. Had there been a trial, the defendant's trial counsel would have been afforded an adequate opportunity to cross-examine effectively the witnesses who gave the statements. In addition to asking each witness about the substance of his or her statement, defense counsel could have questioned the witness about pretrial preparation. Such questioning could negate any mistaken

---

[10]In support of his argument, the defendant relied on *United States* v. *Cerro*, 775 F.2d 908, 915 (7th Cir. 1985), in which the United States Court of Appeals for the Seventh Circuit stated that a defendant's Sixth Amendment right of confrontation "would be impaired if he had to give a précis of his cross-examination to the prosecution before trial." This broad observation has no application to this situation that concerns legitimate pretrial discovery, not a "précis of . . . cross-examination."

impression that the witness was encountering the material for the first time and also could suggest that the witness may have conveniently crafted an explanation for any variations in former testimony or statements. "[T]he right to confront and to cross-examine [a witness] is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Commonwealth* v. *Francis*, 375 Mass. 211, 214, cert. denied, 439 U.S. 872 (1978), quoting *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1973). The trial process seeks to ascertain the truth. Our conclusion recognizes that "[t]he truth is most likely to emerge when each side seeks to take the other by reason rather than by surprise." See Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U. L. Rev. 228, 249 (1964).

(b) There was no violation of the defendant's privilege against self-incrimination under either the Fifth Amendment to the United States Constitution or the broader protection afforded by art. 12. The defendant was not being compelled to state anything himself. Rather, the rule and order only permit discovery of statements made by *other persons* that the defendant "intend[ed] to use at trial." In *United States* v. *Nobles, supra* at 227-228, when defense counsel attempted to impeach the credibility of two prosecution witnesses with prior statements they allegedly had made to a defense investigator, the Federal trial judge ordered that the witnesses' prior statements be disclosed to the prosecutor for his use in cross-examining the investigator. In rejecting the defendant's Fifth Amendment challenge, the United States Supreme Court explained:

> "The Fifth Amendment privilege . . . 'is a personal privilege: it adheres basically to the person, not to information that may incriminate him.'
>
> "In this instance disclosure of the relevant portions of the defense investigator's report would not impinge on the fundamental values protected by the Fifth Amendment. The court's order was limited to statements allegedly made by third parties who were available as witnesses to both the prosecution and the defense. [The defendant] did not prepare the report, and there is no suggestion that the por-

tions subject to the disclosure order reflected any information that he conveyed to the investigator. The fact that these statements of third parties were elicited by a defense investigator on [the defendant's] behalf does not convert them into [his] personal communications. Requiring their production from the investigator therefore would not in any sense compel [the defendant] to be a witness against himself or extort communications from him.

> "We thus conclude that the Fifth Amendment privilege . . . does not extend to the testimony or statements of third parties called as witnesses at trial."

*Id.* at 233-234, quoting *Couch* v. *United States*, 409 U.S. 322, 328 (1973). The reasoning applies to the disclosure of witnesses' statements prior to trial.

The timing of the disclosure has no relevance to the defendant's privilege against self-incrimination. The order merely "accelerate[d]" disclosures that the defendant intended to make. See *Williams* v. *Florida*, 399 U.S. 78, 85 (1970). See *State* v. *Yates*, *supra* at 800 (rejecting Fifth Amendment challenge to order requiring defense to disclose to State recorded and written statements given by prosecution witnesses to defense counsel or defense investigator). The privilege does not entitle "a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense, any more than it entitles him to await the jury's verdict on the State's case-in-chief before deciding whether or not to take the stand himself." *Williams* v. *Florida*, *supra*. This statement applies equally to disclosure of a defense, like alibi, where required by the criminal rules of procedure and to the disclosure required by the order.

(c) The order also did not diminish, in any legally significant way, the defendant's right to be represented by effective counsel or to have a fair trial. No production was required of statements that the defense did not intend to use at trial. As to statements intended to be used at trial, the order simply gives the prosecution fair notice of the information the defendant had obtained from prospective prosecution witnesses in the form of written or recorded statements. Under rule 14, the discovery is reciprocal, and the defendant was also, but first, entitled to statements

of persons in the prosecutor's possession, custody, or control. The defendant's trial counsel would still have been able to cross-examine the prosecutor's witnesses and impeach their credibility. The statements may have contained information that provided substantive evidence that may have benefited the defense. The Commonwealth would be entitled to see that information as well. Nothing in the State or Federal Constitution guarantees a defendant "a right so to defend as to deny the State a chance to check the truth of his position." *State* v. *Angeleri,* 51 N.J. 382, 385, cert. denied, 393 U.S. 951 (1968). As pointed out by the United States Supreme Court in the context of disclosure of an alibi defense:

> "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for [an order] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to [discover and] investigate certain facts [that may be relevant] to the determination of guilt or innocence" (footnote omitted).

*Williams* v. *Florida, supra* at 82. See *Wardius* v. *Oregon,* 412 U.S. 470, 474 (1973) ("The growth of such [reciprocal] discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. . . . [N]othing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals"). Indeed, we have upheld reciprocal discovery obligations, despite their tendency to compel defense counsel to make strategic decisions before trial. See, e.g., *Commonwealth* v. *Diaz,* 431 Mass. 822, 830 (2000) (policy justifying reciprocal discovery, when defendant places his statements and mental state in issue, applies to alleged inability to premeditate or form specific intent to kill, and to lack of criminal responsibility defense); *Commonwealth* v. *Blodgett,* 377 Mass. 494, 499, 500-501 & n.6 (1979) (judge properly precluded defense from calling alibi witnesses until he disclosed their names to Commonwealth); *Commonwealth* v. *Lewinski,* 367 Mass. 889, 902-903 (1975) ("The

judge may condition the right of the defense to secure a witness's statement from the prosecution, on the reciprocal discovery by the defense to the prosecution of all or part of a statement by the same witness given to the defense"). The due process clause speaks "to the balance of forces between the accused and his accuser." *Wardius* v. *Oregon, supra*. That balance is satisfied here. See *State* v. *Yates, supra* at 800-801 (rejecting right to effective assistance of counsel and due process challenges to order requiring defense to disclose to State recorded and written statements given by prosecution witnesses to defense counsel or defense investigator).

4. In summary, we acknowledge, as the defendant had emphasized, that cross-examination is important for determining credibility and assisting the trier of fact in arriving at a fair verdict. We acknowledge as well that some "imbalance" exists between the resources of the State and those of the defendant. The imbalance, however, has been considerably adjusted in modern criminal practice by requiring the State to assist the defense with full discovery, by the provision of considerable funds to hire an investigator and to retain experts to conduct evaluations and other tests (and then to testify), and by nonconstitutionally compelled prophylactic measures, such as permitting jury instruction on topics like the failure of the police to record a confession, see *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447-449 (2004), and mistaken identification, see *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 310-311 (1979) (Appendix). The foregoing lists just a few measures. The role of cross-examination, and the existence of an imbalance, should not override the right of the people, and the victims of crimes, to have the evidence evaluated by a fully informed trier of fact. These considerations are responsibly achieved by the interpretation of the rule we reach. And, as we have pointed out, there is no constitutional infringement on the defendant's rights by our interpretation, notwithstanding his efforts to have created a constitutional chimera. Our interpretation recognizes that criminal trials are matters of justice and not sporting events in which the side that has the strongest advocate (employing advantages to which he or she is not entitled) gains the upper hand.

5. The case is remanded to the county court for the entry of a judgment dismissing the petition as moot.

*So ordered.*

MARSHALL, C.J. (dissenting, with whom Ireland, J., joins). I add the following observations to Justice Cordy's dissent, which I join. *Post* at 231. The right of confrontation is a central mechanism protecting a criminal defendant from an unjust conviction. It is explicitly identified in art. 12 of the Declaration of Rights of the Massachusetts Constitution, and we have long recognized that it is central to truth seeking. See *Opinion of the Justices*, 406 Mass. 1201, 1206 (1989) (noting Colonial legislators intended to "give the accused the benefit of face-to-face cross-examination of the witness personally and in the presence of the trier of fact who could judge his demeanor and credibility"). It is for these reasons that we have repeatedly emphasized the importance that cross-examination plays in the "fact finder's assessment of the truth." *Commonwealth* v. *Vardinski*, 438 Mass. 444, 450 (2003). See *id.*, quoting *Marilyn* v. *Craig*, 497 U.S. 836, 846 (1990) (cross-examination is "the greatest legal engine ever invented for discovering the truth"). See also *Commonwealth* v. *Sanchez*, 423 Mass. 591, 596-597 (1996); *Commonwealth* v. *Kater*, 409 Mass. 433, 446 (1991), *S.C.*, 412 Mass. 800 (1992), and 421 Mass. 17 (1995).

The effectiveness of cross-examination often depends on being able to surprise a witness, particularly an accusing witness, with evidence that contradicts or is inconsistent with his trial testimony. This is *not* "trial by ambush." To the contrary, it permits the jury to assess for themselves the reliability of a witness's memory, or whether an accuser is truthful.

Permitting an accuser to shade his testimony to minimize or eradicate inconsistent or other valuable impeachment material severely undercuts the effectiveness of cross-examination. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 404 (1965) ("no one experienced in the trial of lawsuits[] would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case"); *Commonwealth* v. *Funches,*

379 Mass. 283, 292 (1979), quoting *Davis* v. *Alaska*, 415 U.S. 308, 316 (1974) (cross-examination is "principal means by which the believability of a witness and the truth of his testimony are tested"); 4 J. Wigmore, Evidence § 1260, at 617 (Chadbourn rev. ed. 1972) (cross-examination is "great instrument for the discovery of lies"). In my judgment it also raises serious constitutional concerns. As Judge Richard A. Posner, a distinguished Federal jurist, has noted:

> "[A] defendant's interest in being able to conduct a vigorous and effective cross-examination — an interest central to the right of a criminal defendant under the Sixth Amendment 'to be confronted with the witnesses against him' . . . — would be impaired if he had to give a précis of his cross-examination to the prosecution before trial" (citation omitted).

*United States* v. *Cerro*, 775 F.2d 908, 915 (7th Cir. 1985) (interpreting parallel provision in Federal Rules of Criminal Procedure and effect of pretrial order requiring defense counsel to turn impeachment evidence over to prosecutor). To permit an accusing witness to have "full warning of the danger he [has] to avoid and full opportunity of shaping his answers to meet it," 4 J. Wigmore, Evidence, *supra* at 616, quoting W.M. Best, Evidence § 478 (1849), disables the effectiveness of "that great instrument for the discovery of lies," significantly impairing a defendant's constitutional right of confrontation. Today's decision all but guarantees constitutional challenges in the future. I respectfully dissent.

CORDY, J. (dissenting, with whom Marshall, C.J., and Ireland, J., join). The court today interprets a rule of long standing in a manner not contemplated at the time of its promulgation, inconsistent with the current practice of criminal law in the Commonwealth and most of the country, and with profound implications for the fairness and reliability of our system of criminal justice.[1] It does so not only without recognizing the "sea change" it has wrought, but in the face of a straightforward

---

[1] Prior to today's decision, we have never suggested that any version of Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979), authorized a judge to grant

reading of the applicable rule to the contrary. Because the court's interpretation will serve to undermine rather than further the search for truth, which is at the heart of our adversarial system, I respectfully dissent.

*Background.* Patrick John Durham was charged with murder in the first degree. To ensure a competent defense, his attorney secured the services of an investigator. Because he was indigent, Durham applied for and was awarded an initial grant of funds for this investigation under G. L. c. 261, § 27C. The complexity and length of the investigation, however, required Durham to request additional funds from the court. To justify his request, defense counsel submitted a detailed affidavit from the investigator that listed activities performed, as well as the necessary remaining tasks. This affidavit revealed that the investigator had conducted an extensive investigation and had interviewed a large number of persons.

The Commonwealth thereupon moved to discover "any . . . statements . . . of those persons who are potential witnesses for either [party]" and "any . . . material which may be used for impeachment," plainly to reap the benefits of the thorough defense investigation.[2] Quite simply, the Commonwealth wanted to know what the defense knew about the Commonwealth's

the Commonwealth such expansive and intrusive discovery from the defense in a criminal proceeding. Although we required a defendant to turn over similar material in *Commonwealth* v. *Reynolds*, 429 Mass. 388, 397-398 (1999), we did so because he had signed a voluntary pretrial agreement obligating him to this discovery scheme. We did not hold that rule 14 (a) allowed a judge to order such discovery in the absence of an agreement of the type made by the parties in that case. See Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure at 1457 (LexisNexis 2005) ("The specified obligations under [the reciprocal discovery] subdivision do not go [as] far [as] the discovery ordered in *Reynolds*]"). As made clear by its noted absence from the current version of the mandatory discovery section of rule 14, such discovery is not, to understate the case, "routinely afforded in practice." Reporters' Notes to Mass. R. Crim. P. 14, *supra* at 1451. Additionally, contrary to the motion judge's order, *Commonwealth* v. *Paszko*, 391 Mass. 164, 186 (1984), did not authorize prosecutorial discovery of statements made by Commonwealth witnesses. Finally, I note that any mention of the possibility of reciprocal discovery in our case law, such as that in *Commonwealth* v. *Lewinski*, 367 Mass. 889, 902-903 (1975), decided four years before the rule was promulgated in 1979, has been mere dicta and certainly did not attempt to construe rule 14 in the way we do today.

[2]The Commonwealth attached the investigator's affidavit as an exhibit to its

own witnesses. The judge granted much of the Commonwealth's motion. On appeal, the parties stipulated that the order would require the defendant to turn over to the prosecutor statements made by any of the witnesses the Commonwealth proposed to call at trial that the defense intended to use to impeach them. Even more troubling, the order would permit the prosecutor to share this information with its intended witnesses.

*Discussion.* Determining the propriety of the judge's order requires the court to consider whether our rules of criminal procedure authorize such discovery. The court both finely parses and reads conjunctively rule 14 (a) (2) and (a) (3) (A) to reach its conclusion that the Commonwealth may discover statements of persons whom it intends to call so long as the defense intends to use such statements in any way at trial, including for impeachment purposes.

I would adopt a more plausible interpretation of the rule. As explained below, the rule's text, structure, and history compel a conclusion that the Commonwealth may discover statements only of persons whom the *defendant intends to call as witnesses at the trial.* Requiring discovery of such statements is in line with the modern trend to guard against surprise defenses, thereby ensuring that both prosecutor and defendant are ready to argue the principal issues in the case at trial. In this sense, reducing "[t]rial by ambush," *People* v. *District Court,* 187 Colo. 333, 337 (1975), citing *Dennis* v. *United States,* 384 U.S. 855 (1966), increases the effectiveness of the truth-seeking function of trials. See *ante* at 224, 226, 228.

But forcing the defendant to turn over to the Commonwealth statements made by the Commonwealth's own intended witnesses turns that purpose on its head, and is a far cry from what the drafters of the rule plainly intended. Certainly, the novel interpretation of the rule advanced today does not aid the search for truth. Just as important, it unnecessarily interferes with other interests valued and protected for generations in our system of criminal justice. See, e.g., *Williams* v. *Florida,* 399 U.S. 78, 113

memorandum in support of its motion, and argued that "numerous potential witnesses at trial have been interviewed by a defense investigator [or] by defense counsel . . . . As such, the defendant may well possess certain undisclosed witness statements, facts, and information . . . ."

(1970) (Black, J., concurring in part and dissenting in part) (while "in part a search for truth," a criminal trial "is also . . . designed to protect 'freedom' "). The rules governing our criminal justice system have recognized and sought to equalize the imbalance between those who are accused of crime and the substantial resources and advantages available to the prosecution. See *Commonwealth* v. *Brinkley*, 505 Pa. 442, 461-462 (1984) (Nix, C.J., concurring), citing *Wardius* v. *Oregon*, 412 U.S. 470, 480 (1973) (Douglas, J., concurring) ("[T]he Constitution recognized the awesome power of indictment and the virtually limitless resources of government investigators. Much of the Bill of Rights is designed to redress the advantage that inheres in a government prosecution"). In my judgment, today's interpretation of our discovery rule "tip[s] the balance of advantage even more heavily in the prosecution's favor." *Commonwealth* v. *Brinkley, supra* at 462.

1. *The text of Mass. R. Crim. P. 14.* Rule 14 (a) (2) gives a judge discretion to authorize a defendant to discover from the Commonwealth "relevant evidence," "documents," "reports of physical or mental examinations," "reports of . . . scientific tests or experiments," and *"statements of persons"* (emphasis added). The court correctly notes that "statements of persons" discoverable under rule 14 (a) (2) could encompass statements of persons that might be called at trial by either party. See *ante* at 218. An entirely separate provision for reciprocal discovery, rule 14 (a) (3) (A), authorizes a judge to condition any discovery granted under rule 14 (a) (2) on a requirement that the Commonwealth be allowed to discover from the defense any evidence "discoverable under subdivision (a) (2) which the *defendant intends to use at trial, including the names, addresses, and statements of those persons whom the defendant intends to use as witnesses at trial"* (emphasis added).

The court posits that, by way of incorporation of rule 14 (a) (2), rule 14 (a) (3) (A) allows a judge to permit the Commonwealth to discover from the defense statements of persons that either party might call.[3] See *ante* at 218, 220. So interpreted, the court is forced to treat the last nineteen words of rule

---

[3] Although not stated explicitly, the court's conclusion that rule 14 (a) (3) (A) authorizes the disputed discovery order is based on its textual reading that

14 (a) (3) (A) ("including the names, addresses, and statements of those persons whom the defendant intends to use as witnesses at trial") as nothing more than surplusage.[4] See *ante* at 218-220. Cf. *Meunier's Case*, 319 Mass. 421, 423 (1946) (none of statute's words is "to be rejected as surplusage"). In my view, however, the final passage of rule 14 (a) (3) (A) can only be read to inform the scope of discovery from the defendant of "statements of persons." Cf. *Commonwealth* v. *Boston Edison Co.*, 444 Mass. 324, 344 (2005) (construing disputed statutory language in part by viewing it "in the context of the paragraph's remaining language"); *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 312-313 (1949) (clause or phrases in statute "to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment").

As noted above, rule 14 (a) (2) provides to the defendant not only the discovery of "statements of persons," but also "documents," "reports of physical or mental examinations," "reports of . . . scientific tests or experiments," and other "relevant evidence." Rule 14 (a) (3) (A) makes these materials subject to reciprocal discovery (by the Commonwealth) *if* they are materials "which the defendant intends to use at trial." The "intends to use at trial" limitation on the reciprocal discovery required of the defendant is seemingly clear with respect to documents and reports, but ambiguous as to "statements of persons." Does the limitation apply to the "statements" or the "persons"? The passage ignored by the court clarifies the meaning of "intends to

a statement with which a defendant intends to *impeach* a Commonwealth witness is one "which the defendant intends to use at trial."

[4] The court urges that this passage is one example of a statement that would be discoverable. See *ante* at 219. It offers no persuasive rationale for why the rule itself (which is carefully drafted) would include an extraneous example when an example would typically be included in a comment to the rule. Instead, the court explains that it reads the rule as substantively paralleling "a similar rule in New Jersey," *id.*, referenced in the Reporters' Notes. Unlike the Massachusetts rule, the New Jersey rule contains explicit authority for the State to discover "written statements . . . including any memoranda . . . summarizing the oral statements, made by any witnesses whom the State may call as a witness at trial." N.J. R. Crim. P. 3:13-3(d)(3), (4) (West 2005). Our rule is plainly different.

use at trial" in the context of "statements of persons." A statement of a person the defendant "intends to use" at trial is the statement of a person who the defendant intends to "use as [a] witness[] at trial." So interpreted, rule 14 (a) (3) (A) would not authorize a judge to permit the Commonwealth to discover from the defendant (as reciprocal discovery) statements of persons that the Commonwealth intends to call as witnesses in its case-in-chief. Accord *Osborne* v. *Superior Court,* 157 Ariz. 2, 4-5 (1988) (rule requiring defendant to make available to prosecution "documents . . . which he will use at trial" and rule comment that this is limited to "evidence which the defendant will offer at trial" does not include statement defendant may well use to impeach prosecution witness).

At best, the court's interpretation of the text and structure of rule 14 as it relates to the reciprocal discovery of "statements of persons" is one of two plausible interpretations. To the extent that the text is ambiguous (and I do not consider it such), our obligation is to construe the rule in a way that will effectuate its purposes in light of other rules on similar subject matter. Cf. *Dowell* v. *Commissioner of Transitional Assistance,* 424 Mass. 610, 613 (1997), quoting *Healey* v. *Commissioner of Pub. Welfare,* 414 Mass. 18, 25-26 (1992) ("Provisions of legislation addressing similar subject matter are to be construed together to make a harmonious whole consistent with legislative purpose . . ."). I therefore turn to other aspects of our criminal procedures.

*2. Balancing the policy of discovery with the protections of cross-examination.* Our discovery rules favor liberal discovery. Cf. *Commonwealth* v. *Paszko,* 391 Mass. 164, 188 (1984) ("broad discovery makes for a fair trial and enhances the likelihood that the truth will come out"). *Ante* at 222, 224, quoting Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth? A Progress Report, 68 Wash. U. L.Q. 1, 13, 15 (1990). But the discovery authorized under the court's interpretation of rule 14 (a) does not promote the search for truth. In fact, such discovery will significantly impair that search by disabling the "greatest legal engine" ever invented in that search — cross-examination. 5 J. Wigmore, Evidence § 1367, at 32 (Chadbourn

rev. ed. 1974). See *Kentucky* v. *Stincer*, 482 U.S. 730, 737 (1987) (cross-examination "designed to promote reliability in the truth-finding functions of a criminal trial"); *Chambers* v. *Mississippi*, 410 U.S. 284, 295 (1971), quoting *Dutton* v. *Evans*, 400 U.S. 74, 89 (1970) (cross-examination "helps assure the 'accuracy of the truth-determining process' "); *Pointer* v. *Texas*, 380 U.S. 400, 404-405 (1965) ("certainly no one experienced in the trial of lawsuits . . . would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case"); *Commonwealth* v. *Gallo*, 275 Mass. 320, 333 (1931) (cross-examination is "great principle of government for the security of liberty and the ascertainment of truth").

The reason the Commonwealth seeks to obtain statements made by its witnesses that the defense may use to impeach them is crystal clear and perfectly understandable: advance notice that Commonwealth witnesses have made inconsistent statements or admissions — the grist of impeachment — allows the Commonwealth to take any number of anticipatory actions to mute or disable the cross-examination. See *State* v. *Kinney*, 262 Neb. 812, 817-818 (2001) ("State was provided with advance notice of [the defendant's] potential rebuttal and impeachment evidence. . . . [This] knowledge might allow the prosecutor to . . . craft the opening statement anticipating [the] defenses and minimizing [the defendant's] case, including deflating the impeachment evidence . . . anticipate the cross-examination . . . and prepare the witnesses that cross . . . orchestrate the order of witnesses [or] forgo calling certain witnesses because of the knowledge that impeachment evidence exists . . ."). Having obtained the statements, the Commonwealth can now inform the witness of their discovery, thereby permitting the witness in advance to think of and craft a response to the cross-examination. The discovery thus provides a hitherto unavailable opportunity to reshape what the jury would otherwise see in unvarnished form. The "greatest legal engine" in the search for truth is reduced to a mere sputter.

"[A] defendant's interest in being able to conduct a vigorous and effective cross-examination . . . would be impaired if he had to give a précis of his cross-examination to the prosecution before trial." *United States* v. *Cerro*, 775 F.2d 908, 915 (7th Cir. 1985) (Federal rules bar discovery sought here because

discovery of such statements potentially violates Sixth Amendment to United States Constitution). Confronting a witness off guard with a contrary prior statement (and allowing the trier of fact to see and hear his unvarnished reaction) is significantly more informative than questioning a forewarned witness about the same prior statement.[5] See Nizer, The Art of the Jury Trial, 32 Cornell L.Q. 59, 68 (1946) (comparing difference between these types of confrontation to "atomic energy against a firecracker"); W.G. Young, J.R. Pollets, & C. Poreda, Evidence § 613.2 (2d ed. 1998) ("as a tactical matter, much of the impeaching effect might be lost if the cross-examiner were required to 'tip his hand' in advance of the actual production of the impeaching evidence"). This proposition is neither surprising nor new, and is reflected in the rules of evidence used in civil and criminal trials alike. Proposed Mass. R. Evid. 613 would allow counsel to cross-examine a witness about a prior inconsistent statement without disclosing the contents of that statement to the witness (though, if requested, it must be disclosed to opposing counsel as the cross-examination proceeds). The Advisory Committee's Note explains that the purpose of nondisclosure is "to afford the advocate the tactical choice of not placing the witness on guard." See P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 6.7.2 (7th ed. 1999 & Supp. 2004).

The importance of surprise confrontation is not simply that counsel may prove false a damaging piece of testimony. Its greater significance is to aid a trier of fact in assessing the credibility of a witness's testimony. A witness who is untruthful on several issues can rein in his testimony in the specific areas in which he knows he is to be challenged, thus making it difficult for the defendant to show the jury that the witness should generally not be believed. This critical truth-enhancing value is placed at grave risk when we force the defense to disclose statements it

---

[5] Aside from the witnesses' physical response to the inconsistency that is of obvious help to a trier of fact, a spontaneous answer is more reliable (and therefore more helpful to the jury) than a rehearsed one. We accept this proposition in our law of evidence. For example, we allow admission of spontaneous utterances as exceptions to the general rule barring hearsay based on the assumed reliability of such statements. See P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 8.16 (7th ed. 1999 & Supp. 2004).

may use to impeach witnesses the prosecution intends to call. Because such discovery would more likely harm than aid the discovery of the truth, the rationale behind liberal discovery does not support the court's decision here. Cf. W.G. Young, J.R. Pollets, & C. Poreda, Evidence, *supra* at § 613.2 ("While surprise tactics should not be countenanced when they contribute to withhold or distort substantive proof, it is clear that the exposure of a witness who has blown both hot and cold as to the facts on separate occasions involves no such ethical problem").

The rules of our criminal justice system, including our discovery rules, serve to ensure that defendants are treated fairly. In recognition of the State's power and resources, and the advantage such a position gives the prosecution over the defense in a criminal case,[6] a variety of constitutional, statutory, rule-based and common-law rights are afforded the accused in part to even the playing field. See *Wardius* v. *Oregon*, 412 U.S. 470, 480 (1973) (Douglas, J., concurring in result). As the United States Supreme Court has acknowledged, discovery regimes should similarly be responsive to this imbalance of power. See *id.* at 475-476 n.9 ("State's inherent information-gathering advantages suggest that . . . any imbalance in discovery . . . should work in the defendant's favor"). See also *Commonwealth* v. *Perez*, 698 A.2d 640, 643-644 (Pa. Super. Ct. 1997) ("the more liberal the discovery rules become, the greater the advantage the Commonwealth has in prosecuting its case"). It is therefore unsurprising that "[p]rosecutorial discovery was strongly condemned in early American jurisprudence." *Scott* v. *State*, 519 P.2d 774, 778 (Alaska 1974), and cases and treatises cited therein.[7]

---

[6]The prosecution is the beneficiary of "the investigative resources of the police," has "access to official records," and has the "power to compel testimony by way of grand jury subpoena." Such avenues of investigation "are not equally at the hand of the accused." *Scott* v. *State*, 519 P.2d 774, 784 (Alaska 1974).

[7]The opposition to prosecutorial discovery continued through much of our history. As recently as 1968, a Federal District Court refused to condition defense discovery on the defendant's turning over documentary evidence to the prosecution, noting that "the right of a defendant in a criminal case to remain silent . . . , even at the discovery stage, seems clear." *United States* v.

I do not disagree with the modern trend towards liberalizing discovery for both parties. See *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963) (prosecution must disclose any information which tends to negate defendant's guilt); *Scott* v. *State, supra* at 778, 782 ("It has now become well-settled in many jurisdictions that trial courts have broad discretionary power to order the prosecution to disclose to the defendant any relevant information in the possession . . . of the prosecution," and a "substantial number of states . . . have by rule or statute imposed upon the defendant an obligation to disclose his defenses to the prosecution in advance of trial"); Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U. L. Rev. 228, 245-250 (1964) (advocating prosecutorial discovery of defendant's intended alibi, where in evidence, and of any evidence defendant intends to offer at trial). Nor do I disagree with the modernization of our rules of criminal procedure. Doing so has brought many positive developments. For example, our criminal rules now require defendants to disclose alibi defenses, defenses based on mental illness or disease, and defenses based on claims of license, authority, ownership or exemption. See Mass R. Crim. P. 14 (b), as appearing in 442 Mass. 1518 (2004). These discovery rules ensure that both the prosecutor and the defendant have the opportunity to prepare for issues that will be the focus of the trial.

Liberalizing discovery does not come without its price. I am cognizant that "the more liberal the discovery rules become, the greater the advantage the Commonwealth has in prosecuting its case." *Commonwealth* v. *Perez, supra* at 643 (rejecting prosecution's discovery request for statements of witnesses defense intended to call at trial). Our discovery rules have always sought to maintain a balance between limiting ambushes at trial and preserving time-tested techniques that offer vital protections for the defendant and aid the trier of fact in assessing credibility. There is a world of difference between eliminating surprise defenses and eliminating surprise cross-examinations designed to test the credibility of the witnesses. The court wrongly conflates the two and embarks on a wholly

*Fratello*, 44 F.R.D. 444, 449 (S.D.N.Y. 1968).

new direction that all of the Federal courts and the vast majority of State jurisdictions have not sanctioned.[8]

To date, only two States have provided for such discovery by

[8]The Federal rules explicitly bar the extension of reciprocal discovery to "a statement made to the defendant, or the defendant's attorney or agent, by . . . a government or defense witness." Fed. R. Crim. P. 16 (b) (2) (West 2005). Twelve States have adopted similar or virtually identical restrictions on reciprocal discovery of statements of prosecution witnesses made to the defendant or his agent. See Ala. R. Crim. P. 16.2(d) (West 2005) ("Except as to scientific or medical reports, this rule does not authorize the discovery or inspection of . . . statements made by state/municipality or defense witnesses, or prospective . . . witnesses, to the defendant, the defendant's attorney, or agents"). See also Del. Crim. R. 16 (Michie 2004); Idaho Crim R. 16 (Michie 2005); Kan. Crim. Proc. Code § 22-3212 (West 2005); La. Code Crim. P. arts. 724-728 (West 1998); N.D. R. Crim. P. 16 (West 2005); Ohio R. Crim. P. 16 (West 2005); S.C. R. Crim. P. 5 (West 2006).; S.D. Codified Laws §§ 23A-13-12 to 23A-13-14 (West 2005); Tenn. R. Crim. P. 16 (LexisNexis 2005); W. Va. R. Crim. P. 16 (LexisNexis 2006); Wyo. R. Crim. P. 16 (LexisNexis 2005). Eight other States have explicitly precluded discovery similar to or less intrusive than the discovery sought here, either by rule or case law. See *Scott v. State,* 519 P.2d 774, 785 (Alaska 1974) (requiring defense to turn over names, addresses, and statements of witnesses violates State constitutional right against self-incrimination); *Osborne* v. *Superior Court,* 157 Ariz. 2, 5-6 (Ct. App. 1988) (rules do not authorize disclosure of witnesses' prior statement that might be used for impeachment purposes; any discretionary discovery can only be ordered after showing of hardship); *Hubbard* v. *Superior Court,* 66 Cal. App. 4th 1163, 1169 (1997) (language of reciprocal discovery section of Penal Code "contains nothing that would authorize the discovery of statements from witnesses whom the accused does not intend to call at trial"); *Richardson* v. *District Court,* 632 P.2d 595, 599 (Colo. 1981) ("The exclusion of non-expert witnesses' statements from prosecutorial discovery, far from being an oversight, reflects a purposeful decision to prevent the [potential] impairment of constitutional rights . . ."); People *vs.* Bebeau, No. 198136 (Mich. Ct. App. June 30, 1998) (discovery rule "does not require a party to disclose documents to be used at trial for impeachment purposes"); *Commonwealth* v. *Perez,* 698 A.2d 640 (Pa. Super. Ct. 1997) (neither rule nor State Supreme Court has explicitly authorized defendant to turn over witness statements made to defendant); *Thornton* v. *State,* 37 S.W.3d 490 (Tex. Ct. App. 2000) (no reciprocal discovery in Texas beyond expert witness disclosure); *State* v. *Barrows,* 158 Vt. 445, 449-450 (1992) ("Although some state have enacted rules allowing the prosecution to discover defense witness statements in criminal cases . . . Vermont is not among them. States without such rules have held that the prosecution cannot obtain witness statements in the possession of the defense"). Finally, in fifteen States that do not provide for discretionary discovery in addition to discovery authorized by rule or statute, the rules governing reciprocal discovery either do not authorize prosecutorial discovery of any witness statements or only affirmatively provide for discovery of statements of witnesses whom a defendant intends to call to the

rule and have done so *explicitly.* See Minn. R. Crim. P. 9.02 (West 2006) ("defendant shall permit the prosecuting attorney to inspect and reproduce any relevant written or recorded statements of the persons whom the defendant intends to call as witnesses at the trial and also statements of prosecution witnesses . . . and . . . of any oral statements made by such witnesses"); N.J. R. Crim. P. 3:13-3(d) (West 2005) ("defendant shall permit the state to inspect . . . the names and addresses of persons . . . who may be called as witnesses at trial and their written statements . . . including memoranda reporting . . . their oral statements [and] written statements . . . including any memoranda reporting or summarizing the oral statements, made by any witnesses whom the State may call as a witness at trial"). Five others have authorized this type of discovery in the absence of explicit language directing it.[9] We are ill advised to interpret

---

stand at trial. See Ark. R. Crim. P. 18.1-18.3 (LexisNexis 2005); Ga. Code Ann. § 17-16-4 (2004); Haw. R. Penal P. 16 (Michie 2005); Iowa Code Ann. R. 2.14 (West 2005); Ky. R. Crim. P. 7.24 (West 2005); Me. R. Crim. P. 16A (West 2005); Md. R. Crim. P. 4-263 (West 2005); Miss. Uniform R. Cir. and County Cts. P. 9.04 (West 2005); Neb. Rev. Stat. §§ 29-1912, 29-1916 (1995); Nev. Rev. Stat. § 174.245 (2003); N.Y. Crim. Proc. Law §§ 240.30-240.40 (McKinney 1996); N.C. Gen. Stat. Ann. § 15A-905 (LexisNexis 2005); Okla. Stat. Ann. § 2002 (West 2006); R.I. R. Crim. P. 16 (LexisNexis 2005); Va. R. 3A:11 (LexisNexis 2005); Wis. Stat. Ann. § 971.23 (West 2005). The well-known principle expressio unius est exclusio alterius strongly suggests that, at least in most of these States, the discovery at issue in the instant case is not accepted. But see N.Y. Crim. Proc. Law §§ 240.30-240.40; *People* v. *Perez,* 171 Misc. 2d 75, 78 (N.Y. Sup. Ct. 1996) (rule authorized prosecutorial discovery of electronic recordings which defendant intended to introduce at trial; court held that "[i]n any event . . . as a matter of fundamental fairness, the People are clearly entitled to pretrial discovery of all statements — whether they be tape recorded, handwritten or stenographically transcribed — of its witnesses that were previously obtained by the defense").

[9] See *State* v. *Culkin,* 791 S.W.2d 803, 811 (Mo. Ct. App. 1990) (order requiring defendant to turn over "statements of witnesses for the state . . . that might appear, for impeachment purposes or otherwise" did not violate work product doctrine and was otherwise acceptable under discretionary discovery rule); *State* v. *Chagnon,* 139 N.H. 671, 673, 677-678 (1995) (discovery rules offer court discretion to order that "any statements generated by the State or the defendant of a witness to be called to testify at trial shall be given to the opposing party"); *People* v. *Perez,* 171 Misc. 2d 75, 78 (N.Y. Sup. Ct. 1996) ("as a matter of fundamental fairness, the People are clearly entitled to pretrial discovery of all statements . . . of its witnesses"); *State* v. *Young,* 94 Or. App. 683, 685-686 & n.1, 689 (1989) (discovery rule requiring

our rule in a manner that is out of the mainstream where there is no reason for the court to do so.

The Commonwealth had the opportunity and ability independently to gather and attempt to rebut the substance of the material it seeks. It did not need the court to accomplish its legitimate needs in the present situation. If the Commonwealth was concerned whether its witnesses had made statements to the defense, it could have asked them. If the Commonwealth was concerned about the character or past acts of one of its witnesses, the Commonwealth could have used its considerable resources to investigate. If the Commonwealth was unsure about the tactical advantage of calling a particular witness, it was free not to call that witness. If a Commonwealth witness had been impeached, the prosecutor would have had the opportunity, after seeing the statement used in the impeachment, to rehabilitate that witness.

The Commonwealth cited *no* compelling need or any otherwise substantial reason to justify its request in this case. I would not change our long-standing jurisprudence in the absence of any such claim. "Ultimately, the state's information gathering advantage belies the contention that discovery rights between the prosecution and defendant should be coextensive. It would be a mockery of due process if the state could, in addition to relying on its infinitely more effective position as an investigating body and its superior resources, compel the defendant to lighten the prosecution's burden of proving its case through the discovery process." *Commonwealth* v. *Brinkley*, 505 Pa. 442, 461 (1984) (Nix, C.J., concurring), citing *Murphy* v. *Waterfront Comm'n*, 378 U.S. 52, 55 (1964). Accord *Richardson* v. *District Court*, 632 P.2d 595, 599-600 (Colo. 1981) (rejecting prosecutorial discovery of defense witness statements because no explicit authorization in rule and significant

defendant to turn over documents he "intends to offer . . . at trial" includes tape recordings and transcripts of recent telephone conversation between victim — who was a prosecution witness — and defendant's son that defendant can "reasonably predict" he will use to impeach State witness); *State* v. *Yates*, 111 Wash. 2d 793, 797-800 (1988) (discovery rule allowing court to order defendant to allow inspection of "physical or documentary evidence" authorizes court to order prosecutorial discovery of statements made to defense by prosecution witnesses).

constitutional question concerning prosecutorial discovery counsel against allowing ad hoc discovery determinations); *State* v. *Barrows*, 158 Vt. 445, 451 (1992) ("In light of the limited language of the rules and the restrictions of the common law, we hold that the State may not subpoena witness statements taken by the defendant's investigator").[10] I respectfully dissent.

---

[10]The rule the court interprets today is the former version, and the current version, Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004), does not include the language the court relies on in this case. Instead, the only "statements of persons" that the new rule expressly makes subject to prosecutorial reciprocal discovery are statements of persons that the defendant intends to call at trial. Mass. R. Crim. P. 14 (a) (1) (A) (vii), (a) (1) (B), 442 Mass. 1518 (2004). The Reporters' Notes make clear that prosecutorial discovery of statements made to the defense by prosecution witnesses is not part of the required reciprocal discovery scheme. See Reporters' Notes to Mass. R. Crim. P. 14, Mass. Ann. Laws, Rules of Criminal Procedure at 1457 (LexisNexis 2005). While another subdivision of the new rule states that "the Commonwealth may move[] for discovery of other material and relevant evidence not required by [the rest of the rule]," Mass. R. Crim. P. 14 (a) (2), that subdivision is not before us, and we need not decide its reach or whether a showing of particular hardship or special circumstance would be necessary to obtain additional discovery under its authority.